NORMAN v. CAMERON

[127 N.C. App. 44 (1997)]

─────────────

LISA NORMAN, PETITIONER-APPELLANT V. C.C. CAMERON, IN HIS OFFICIAL CAPACITY AS CHAIRMAN OF THE BOARD OF GOVERNORS OF THE UNIVERSITY OF NORTH CAROLINA, AND DAVID N. EDWARDS, JR., IN HIS OFFICIAL CAPACITY AS CO-CHAIRMAN OF THE STATE RESIDENCE COMMITTEE OF THE UNIVERSITY OF NORTH CAROLINA, RESPONDENT-APPELLEES

No. COA96-903

STEPHANIE FOUST, PETITIONER-APPELLANT V. C.C. CAMERON, IN HIS OFFICIAL CAPACITY AS CHAIRMAN OF THE BOARD OF GOVERNORS OF THE UNIVERSITY OF NORTH CAROLINA, AND DAVID N. EDWARDS, JR., IN HIS OFFICIAL CAPACITY AS CO-CHAIRMAN OF THE STATE RESIDENCE COMMITTEE OF THE UNIVERSITY OF NORTH CAROLINA, RESPONDENT-APPELLEES

No. COA96-912

(Filed 5 August 1997)

1. **Colleges and Universities § 29 (NCI4th)— university tuition—state residency denied**

Decisions by the University of North Carolina State Residence Committee (SRC) denying applications for state residency for tuition purposes were supported by substantial evidence in the whole record. The superior court's orders show that the correct standard of review was applied; both petitioners are presumed to have the same domicile as their parents because their living parents have established legal residences in other states and neither have lived in North Carolina for five consecutive years; the emphasis in their applications on educational opportunities combined with the fact that they immediately

enrolled at UNC-G upon their arrival support the reasonable inference that their presence in the State was incident to enrollment in an institution of higher education; additionally, neither petitioner has held a full-time or permanent job in the state, with both working only part-time, including work as research assistants at UNC-G; both petitioners made statements which would support a finding that they intend to reside in North Carolina permanently; and the fact that both women closely linked these general intentions with hopes of finding jobs in the Greensboro area reasonably supports the inference that their interest in North Carolina is contingent on their ability to find permanent jobs here after graduating from UNC-G. The SRC is required to give careful consideration to a petitioner's statement of intentions, but it is not required to accept these statements at face value.

## 2. Colleges and Universities § 29 (NCI4th)— university tuition—state residency denied—procedural due process

Petitioners' state and federal constitutional rights to procedural due process were not violated in the denial of their applications for state residency for tuition purposes. From a constitutional perspective, petitioners' monetary interest in obtaining state residence is less significant than other more fundamental interests. The General Assembly and our state universities have a substantial interest in seeing that only bona fide state residents are afforded that status for tuition purposes, so that our universities do not become migratory destinations for out-of-state residents who move here chiefly to take advantage of the low tuition for quality education. Additionally, given the potentially large number of applicants for state residency status, the university has a significant interest in efficient and streamlined procedures for reviewing applicant qualifications. There is no serious risk that the procedures actually used in reviewing petitioners' applications would result in an erroneous deprivation of their interests in state residency status and there is minimal benefit from the additional procedures which petitioners assert due process requires. Although petitioners assert that a balancing test should be applied, they do not contend that the North Carolina Constitution affords due process protection different from or in addition to that provided by the federal constitution. There is no violation of federal constitutional rights and claims under the North Carolina Constitution are not further addressed.

**NORMAN v. CAMERON**

[127 N.C. App. 44 (1997)]

Appeals by petitioners from orders entered 14 June 1995 by Judge Ben F. Tennille in Guilford County Superior Court. Heard in the Court of Appeals 23 April 1997.

*Central Carolina Legal Services, Inc., by Brenda Bergeron and Stanley B. Sprague, for petitioner-appellants.*

*Attorney General Michael F. Easley, by Assistant Attorney General Thomas O. Lawton, III, for respondent-appellees.*

McGEE, Judge.

Upon motion of respondents and by order filed 11 September 1996, this Court consolidated these appeals, both of which raise substantially identical issues for review. Petitioners challenge the trial court's decision: (1) to affirm the University of North Carolina's denial of their applications for state residency for tuition purposes, and (2) to dismiss their declaratory judgment claims. Both petitioners claim the University's decisions are not supported by substantial evidence and that the procedures used by the University in denying their applications violated their due process rights under our federal and state constitutions. We affirm the trial court's decisions.

On 1 August 1995 Lisa Norman and Stephanie Foust filed applications with the University of North Carolina-Greensboro (UNC-G), seeking classification as state residents for tuition purposes. On 7 August 1995, UNC-G's Office of the Provost (Provost) denied both applications. Petitioners appealed and on 25 September 1995, the UNC-G Residence Appeals Committee (RAC) affirmed the Provost's decisions. Petitioners appealed to the University of North Carolina State Residence Committee (SRC) which upheld the RAC's decision as to both petitioners on 22 January 1996. On 21 February 1996, both Norman and Foust filed petitions in Guilford County Superior Court for judicial review under N.C. Gen. Stat. § 150B-43 *et seq.* and for declaratory judgments under N.C. Gen. Stat. § 1-253 *et seq.* Petitioners amended their petitions on 18 March 1996. Respondents moved to dismiss the declaratory judgment actions. By orders entered 14 June 1996, the trial court dismissed petitioners' declaratory judgment actions for failure to state a claim on which relief could be granted and affirmed the SRC's decisions denying petitioners state residency status for tuition purposes.

In her application and at the hearing, petitioner Norman provided the following information. She was born 10 August 1966 in Buffalo,

New York. From birth until her move to Greensboro in 1994, she claimed domicile at her parents' address in Williamsville, New York where her parents still live and where she graduated from high school in June 1984. After high school, she attended various colleges, community colleges, and universities in Buffalo, New York and in Ohio. She moved to Greensboro in August 1994 for the "educational and professional opportunities that are available." Immediately upon arriving in North Carolina, she enrolled at UNC-G and, after completing her first year of study, filed her application for state residency status. She submitted proof of a North Carolina driver's license, voter and vehicle registration in North Carolina, part-time employment in North Carolina, and payment of vehicle and income taxes in North Carolina. During the year after her arrival in Greensboro, she held a part-time job at a clothing store and a part-time job as a research assistant at UNC-G. In her application, she stated her earnings provided 100% of her support and testified in her affidavit that she was involved in the Greensboro community. She also testified: "I do not intend on picking up and going to live with my parents again"; "this is where I need to be if I am going to find a good job"; and "I have a wonderful future here."

Petitioner Foust provided the following information in support of her application. She was born 14 December 1968 in Altoona, Pennsylvania, and graduated from high school there in 1986. Her father still lives there; her mother moved to Virginia in 1993. From 1986 to 1990 she attended college in Pennsylvania. In her application she stated that, after graduation from college, she traveled for four years and then decided "to make my home" in North Carolina. Her last address prior to moving to North Carolina was Duncansville, Pennsylvania. She chose to move to Greensboro "because of its importance in the textile industry and the educational opportunities it offered to me." Upon her arrival, she enrolled at UNC-G, registered to vote in North Carolina, registered her vehicle in North Carolina, paid vehicle and income taxes in North Carolina, and obtained a North Carolina driver's license. She stated she was financially independent of her parents. Since her arrival in Greensboro, Foust has held part-time jobs as a research or graduate assistant at UNC-G. In her affidavit, she testified: "I have every intention of continuing my professional life in North Carolina. I have volunteered at the furniture market, worked as a research assistant and become involved in the community. I am putting down roots."

**[1]** Norman and Foust first contend the trial court should have reversed the SRC's decisions as unsupported by substantial evidence. We disagree.

When reviewing a superior court order affirming or reversing a final agency decision, an appellate court must examine the order for error of law and determine (1) whether the superior court "exercised the appropriate scope of review and, if appropriate," (2) decide "whether the court did so properly." *ACT-UP Triangle v. Commission for Health Services*, 345 N.C. 699, 706, 483 S.E.2d 388, 392 (1997) (quoting *Amanini v. N.C. Dept. of Human Resources*, 114 N.C. App. 668, 675, 443 S.E.2d 114, 118-19 (1994)).

The standard of review applied by a superior court when reviewing a final agency decision "depends upon the particular issues presented on appeal." *ACT-UP Triangle*, 345 N.C. at 706, 483 S.E.2d at 392 (quoting *Amanini*, 114 N.C. App. at 674, 443 S.E.2d at 118). The superior court may reverse or modify the agency's decision "if the substantial rights of the petitioners may have been prejudiced because the agency's findings, inferences, conclusions, or decisions, are: . . . (5) [u]nsupported by substantial evidence . . . in view of the entire record as submitted." N.C. Gen. Stat. § 150B-51(b)(5) (1995). Substantial evidence is "more than a scintilla" and is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Lackey v. Dept. of Human Resources*, 306 N.C. 231, 238, 293 S.E.2d 171, 176 (1982). Review of the whole record requires the court "to examine all competent evidence (the 'whole record') in order to determine whether the agency decision is supported by 'substantial evidence.'" *Amanini*, 114 N.C. App. at 674, 443 S.E.2d at 118.

In both of the instant cases, the superior court's orders show the correct standard of review was applied. Both orders provide: "[h]aving considered the record of the agency proceedings and the arguments and submissions of counsel, the Court determines that the decision is supported by substantial evidence in the record." In addition, upon review of the whole records in both cases, we affirm the superior court's findings of substantial evidence.

N.C. Gen. Stat. § 116-143.1(b) (1994) provides, in pertinent part:

(b) To qualify as a resident for tuition purposes, a person must have established legal residence (domicile) in North Carolina and maintained that legal residence for at least 12 months im-

mediately prior to his or her classification as a resident for tuition purposes.

(c) To be eligible for classification as a resident for tuition purposes, a person must establish that his or her presence in the State currently is, and during the requisite 12-month qualifying period was, for purposes of maintaining a bona fide domicile rather than of maintaining a mere temporary residence or abode incident to enrollment in an institution of higher education.

The legal residence of a person's living parents is prima facie evidence of that person's legal residence. G.S. § 116-143.1(e). This presumption "may be reinforced or rebutted relative to the age and general circumstances of the individual." *Id.* However, G.S. § 116-143.1(e) provides that if the individual has lived in the state for five consecutive years prior to enrollment, the legal residence of his or her parents when domiciled out of the state is not prima facie evidence of the individual's legal residence. "A 'legal resident' or 'resident' is a person who qualifies as a domiciliary of North Carolina." G.S. § 116-143.1(a)(1). "Domicile" is "one's permanent, established home as distinguished from a temporary, although actual, place of residence." *Hall v. Board of Elections*, 280 N.C. 600, 605, 187 S.E.2d 52, 55 (1972).

Under G.S. § 116-143.1(e), both Norman and Foust are presumed to have the same domicile as their parents because their living parents have established legal residences in other states and neither Norman nor Foust have lived in North Carolina for five consecutive years. In answering why she moved to North Carolina, Norman stressed in her application the "*educational* and professional opportunities" available in Greensboro. (Emphasis added). In Foust's application, she stated she came to North Carolina "for *educational* opportunities." (Emphasis added). This emphasis on educational opportunities by both Norman and Foust combined with the fact that they both immediately enrolled at UNC-G upon their arrival in North Carolina support the reasonable inference that their "presence in the State" was "incident to enrollment in an institution of higher education" rather than "for purposes of maintaining a bona fide domicile" pursuant to G.S. § 116-143.1(c). In addition, neither Norman nor Foust have held full-time or permanent jobs in this state. Both have worked only part-time, including work as research assistants at UNC-G.

Both women did make statements which would support a finding that they intended to reside in North Carolina permanently. However,

the fact that both women closely linked these general intentions with hopes of finding jobs in the Greensboro area reasonably supports the inference that their interest in North Carolina is contingent on their ability to find permanent jobs here after graduating from UNC-G. Although the SRC should give careful consideration to a petitioner's statement of intentions, it is not required to accept these statements at face value. "[A]s between the agency which has expertise in its area and the reviewing court, the agency is in a better position to 'determine the weight and sufficiency of the evidence and the credibility of the witnesses.'" *Wilson v. State Residence Committee of U.N.C.*, 92 N.C. App. 355, 358, 374 S.E.2d 415, 416 (1988) (quoting *Comr. of Insurance v. Rate Bureau*, 300 N.C. 381, 406, 269 S.E.2d 547, 565 (1980)), *disc. review denied*, 324 N.C. 252, 377 S.E.2d 764 (1989). We hold the SRC's decisions denying Norman's and Foust's petitions are supported by substantial evidence in the whole record.

[2] Norman and Foust next contend the SRC violated their federal and state constitutional rights to procedural due process. For this reason, they contend the trial court should have reversed the SRC's decisions under G.S. § 150B-51(b).

Under the United States Constitution, the threshold requirement for a procedural due process claim is that the complainant must have a protected liberty or property interest in the benefit claimed. *See Board of Regents v. Roth*, 408 U.S. 564, 569, 33 L. Ed. 2d 548, 556 (1972). If the complainant is found to have such an interest, a reviewing court must then assess the adequacy of the procedures used by balancing the following factors: (1) the private interest affected; (2) the risk of "an erroneous deprivation" of this interest through the procedures used and "the probable value, if any, of additional or substitute procedural safeguards"; and (3) the state's interest, "including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews v. Eldridge*, 424 U.S. 319, 335, 47 L. Ed. 2d 18, 33 (1976).

Here, we need not decide whether Norman and Foust have a protected liberty or property interest as applicants for state residency status for tuition purposes because we hold, even if they have such an interest, the procedures applied in reviewing their applications were constitutionally adequate.

We first evaluate the private versus the governmental interests affected. We acknowledge that, from a monetary perspective, petitioners' interests in obtaining state residency status is significant

because of the future potential reduction in tuition. However, from a constitutional perspective, petitioners' interest is less significant than other more fundamental interests. *See Lister v. Hoover*, 706 F.2d 796, 802-803 (1983).

In contrast, our General Assembly and our state universities have a substantial interest in only bona fide state residents for tuition purposes being afforded this status. That is, our state university system has a serious interest in our universities not becoming migratory destinations for out-of-state residents who move here chiefly to take advantage of the low tuition for quality education available for residents at these universities. In addition, given the potentially large number of applicants for state residency status at our state universities, our state university system has a significant interest in efficient and streamlined procedures for reviewing applicant qualifications.

We find no serious risk that the procedures actually used in reviewing petitioners' applications would result in an erroneous deprivation of their interests in state residency status. The process provided included the following: (1) the application for state residency status notified petitioners of the applicable statutes and regulations and made copies of these available for inspection; (2) the application included detailed questions specific to the applicant and provided the applicant the opportunity to attach additional material in support of the application; and (3) the letters from the Provost denying petitioners' applications referred them to a manual explaining the decision-making process used, made this manual available, notified petitioners of their appeal rights, and provided them a copy of the appeal procedure.

At the RAC hearings, petitioners and their attorneys were allowed to attend the hearing and petitioners were given the opportunity to speak. At the hearings, the RAC reviewed the material in petitioners' files but did not permit them to submit new factual assertions. However, according to the appeals procedure, if an applicant desires to present new information, the RAC will remand the case to the Provost's office for consideration of the new information. After being notified in writing of the RAC's decisions, petitioners were given an opportunity to appeal to the SRC. After considering petitioners' appeals, the SRC sent petitioners letters addressing their procedural concerns and denying the requested relief on the grounds that the records contained a reasonable basis for UNC-G's determination that they had not proven their claims for state residency. These proce-

dures allowed petitioners to build an initial record in support of their applications, to have a face-to-face hearing before the RAC, and to have the SRC review for any legal and procedural errors and for abuse of discretion.

Norman and Foust assert due process requires the following additional procedures. First, they contend the RAC must allow them to present new evidence at the hearing and that the SRC should make an independent decision on review rather than merely reviewing UNC-G's initial decision for errors. We find little probable value, if any, in these additional procedures. Petitioners are given ample opportunity in their applications to provide supportive material. If circumstances should change after the initial application, the applicant may request the application be remanded to the Provost for review of the additional information.

Petitioners also assert due process requires the RAC make a record, such as a tape recording, transcript, or summary of evidence, of the hearings held on the applications and that the SRC review these records in making its decisions. We find the benefit of these additional procedures is minimal as well. Since no additional evidence is taken at the RAC hearing, there is no need to preserve additional evidence by a hearing transcript or other recording device.

We also find no merit in petitioners' assertions that due process requires the Provost, the RAC, and the SRC to provide more detailed explanations of the reasons why their applications were denied. The letters from the Provost stressed the preponderance of evidence standard and stated that the decisions were based on the information available. The minutes from the 25 September 1995 RAC meeting reviewing petitioners' applications state: "Insufficient evidence to overturn the original decision." The SRC letters informing petitioners of the SRC's decisions emphasized that petitioners were required to prove state residency status by a preponderance of evidence. These materials clarify that petitioners simply did not prove by a preponderance of evidence that they were entitled to the status. A requirement that the Provost, the RAC, and the SRC provide more detailed statements of reasons would likely impose considerable administrative burdens and delay with attendant financial costs. *See Lister*, 706 F.2d at 804. This burden would be magnified given the potentially large number of applicants for in-state tuition status in any given year. *See id.* Under the circumstances, the brief statement of reasons given by the Provost, the RAC, and the SRC were adequate.

Foust asserts an additional procedure is required by due process, *i.e.*, that her attorney should have been permitted to make oral argument, to question his client, and to cross-examine other witnesses at the hearing. We disagree. The information relevant to a decision on Foust's application was within her control. She has not suggested there were key witnesses from whom she needed to get critical information by cross-examination. As to her own statements, Foust was given opportunity to speak to the RAC and to have an attorney help her prepare. Furthermore, she does not assert there is any factual dispute regarding the accuracy of the facts asserted in her application. Under the circumstances, we see little additional due process value in permitting Foust's attorney to question her and others at the hearing or in permitting her attorney to make arguments.

We also find no merit in petitioners' contention that the procedures used in denying their applications violated their procedural due process rights under the law of the land clause of Article I, Section 19 of our North Carolina Constitution. Petitioners assert the balancing test in *Mathews* should be applied in evaluating these rights. We question such an application given our Supreme Court's decision in *Henry v. Edmisten and Barbee v. Edmisten*, 315 N.C. 474, 480, 490-96, 340 S.E.2d 720, 725, 731-34 (1986). However, since petitioners do not contend our North Carolina Constitution affords any due process protection different from or in addition to that afforded by our federal constitution, and since we find no violation of petitioners' federal constitutional rights, we need not further address their claims under the North Carolina Constitution.

Petitioners also contend the trial court erred by dismissing their declaratory judgment actions for failure to state a claim upon which relief can be granted. In these actions, petitioners sought a declaration by the superior court that due process requires that the RAC institute certain additional procedures in reviewing applications for state residency status for tuition purposes. The procedures petitioners seek in their declaratory judgment actions are the same procedures addressed above and the due process concerns raised in these actions are the same as those raised in their petitions for judicial review. Since we have held the procedures provided are constitutionally adequate, it is not necessary to address the merits of petitioners' declaratory judgment actions further.

The trial court orders in both cases are affirmed.

Affirmed.

Judges COZORT and MARTIN, John C., concur.

Judge Cozort participated in this opinion prior to his resignation on 31 July 1997.