STATE v. HUGHES

[136 N.C. App. 286 (2000)]

---

STATE OF NORTH CAROLINA v. JOHN E. HUGHES

No. COA99-27

(Filed 4 January 2000)

**Search and Seizure— investigatory stop—anonymous inform-**
**ant—predictions about future behavior—verified by offi-**
**cers—sufficient indicia of reliability**

   In a case where an anonymous caller provided information to the police that a dark-skinned Jamaican individual, weighing about 300 pounds, about 6 feet in height, approximately 25 years old, with a short haircut, clean cut, and wearing baggy pants, would be arriving on the weekend in Jacksonville on a bus from New York City about 5:30 p.m., either carrying no luggage or an overnight bag, traveling to North Topsail Beach by taxi or other prearranged transportation, and would possess cocaine and mar- ijuana, the trial court erred in concluding the anonymous inform- ant did not provide reliable information sufficient to justify an investigatory stop, and subsequently by granting defendant's motion to suppress the evidence of drugs, because significant aspects of the anonymous informant's predictions about the future behavior of defendant were verified by the detectives, and thus, exhibited sufficient indicia of reliability.

   Judge TIMMONS-GOODSON dissenting.

   Appeal by State from written order granting defendant's motion to suppress filed 10 December 1998 by Judge James E. Ragan, III, in

Onslow County Superior Court. Heard in the Court of Appeals 16 November 1999.

*Attorney General Michael F. Easley, by Special Deputy Attorney General William P. Hart and Agency Legal Specialist Kathy Jean Moore, for the State.*

*Edward G. Bailey, for defendant-appellee.*

GREENE, Judge.

The State, pursuant to N.C. Gen. Stat. § 15A-979(c), appeals from the trial court's pre-trial order granting a motion by John Elvis Hughes (Defendant) to suppress evidence.

The evidence shows that during the morning of 13 March 1998,[1] Steve Imhoff (Imhoff), a detective with the Jacksonville Police Department, was in the office of the head of Narcotics Division of the Onslow County Sheriff's Department, Captain Matthews (Matthews), when Matthews received a telephone call. After the telephone call, Matthews told Imhoff the details of the conversation he just had with a "confidential, reliable[] informant," who informed Matthews "that a person with [the] nickname Markie . . . , [a] dark-skinned Jamaican from New York [weighing] three hundred pounds or [more, who is] approximately [six foot to six foot and two inches in height and] approximately twenty to thirty years of age," would be arriving in Jacksonville with narcotics in his possession. Matthews stated this individual has a "short haircut, [is] clean cut, [and] wears bagg[y] pants." Further, Matthews told Imhoff this individual "comes on the weekend before dark, possibly [on the] 5:30 bus; sometimes takes a [taxi]cab, sometimes somebody picks him up. He would be [carrying] powder cocaine and marijuana[, but would not have any luggage] except maybe an overnight bag," and he would be on his way to "North Topsail" Beach.

Imhoff testified at the suppression hearing that he did not know Matthews' "confidential, reliable informant," had never used him before, did not know whether Matthews had ever used him before, or whether he was reliable. Imhoff testified he was relying on Matthews and "took it for granted" that Matthews had used the informant before.

---

1. We take judicial notice that 13 March 1998 was a Friday.

After receiving the information, Imhoff telephoned Devon Bryan (Bryan), a detective with the Jacksonville Police Department, and relayed the information given to him by Captain Matthews. Imhoff also took his notes taken from the conversation with Matthews and left them on Bryan's desk. Imhoff telephoned Detective Bryan later that day to make sure Bryan found the notes, to explain the situation in more detail, and to impress upon him the importance of going to the bus station. Imhoff told Bryan the described individual was supposed to be arriving on the 5:30 p.m. bus, but he may be early. Bryan testified he could not recall whether Imhoff provided him with a name of the described individual, he did not have a description of the clothes the individual would be wearing other than his pants would be "baggy," and he did not know the exact bus on which the individual would be traveling to the Jacksonville Trailways bus station.

After Imhoff's second telephone call, Bryan telephoned the Jacksonville Trailways bus station and was informed that one bus from New York had arrived earlier that day. Bryan was told the next arriving bus would be coming from Rocky Mount. Bryan could not recall whether he was notified this bus would be coming from New York, but he knew Rocky Mount is a common transit point from New York to Jacksonville. Bryan has had investigations where individuals have come to Jacksonville by bus from New York through cities other than Rocky Mount.

Bryan and his partner, Detective Jessie McKoy (McKoy), on 13 March 1998, drove to the bus station in a gray unmarked police van and waited for the bus from Rocky Mount, which arrived at 3:50 p.m. Once there, Bryan and McKoy were unable to see the passengers exiting the bus, because the bus door opened on the opposite side of the bus from where they were parked. Bryan and McKoy, however, were able to observe Defendant walk around from behind the bus after it arrived, and they had not observed Defendant in the bus station parking lot prior to the bus' arrival. According to Bryan, Defendant "matched the exact description" of the description of the man that Imhoff had given him, and he was carrying the same type of luggage as the described man.

Bryan and McKoy observed Defendant immediately walk to and enter a waiting taxicab. The taxicab exited the parking lot and drove south on Highway 17. Bryan and McKoy followed the taxicab to the intersection of Highway 17 and Georgetown Road. When Bryan noticed the taxicab would soon be leaving the Jacksonville city lim-

its, he and McKoy conducted a vehicle stop of the taxicab, utilizing the assistance of a marked police vehicle.

Imhoff testified in order to drive to Topsail Beach from Jacksonville one has to drive south on Highway 17 and that Georgetown Road is between the bus station and Topsail Beach. A vehicle traveling south on Highway 17 has to drive past the "Triangle area" in order to determine if it is going to Topsail Beach rather than Wilmington or Richlands. According to Imhoff, the taxicab in which Defendant was traveling was stopped before it had passed the "Triangle area," at a location approximately twenty miles from Topsail Beach.

After stopping the taxicab, Bryan informed Defendant he was a police officer and why he was stopping him, and asked Defendant to step out of the vehicle. Bryan also asked Defendant if he had any controlled substances in his possession and if he would consent to a search. According to Bryan, Defendant replied to Bryan's request to search him by saying "go ahead, I don't mind."

Bryan conducted a pat-down search of Defendant's person, searched the area where Defendant was sitting in the taxicab, and searched Defendant's travel bag. After searching the vehicle and the bag, Bryan asked Defendant to remove his shoes. The search of Defendant's shoes at the site of the traffic stop and a more thorough search at the Jacksonville Police Station revealed they contained marijuana weighing 342.1 grams and cocaine weighing 20.8 grams.

On 19 April 1998, Defendant was indicted for possession with intent to sell and deliver cocaine, possession with intent to sell and deliver marijuana, manufacturing cocaine, and manufacturing marijuana. Prior to trial, Defendant filed a motion to suppress the evidence seized from Defendant by Bryan.

A hearing was conducted by the trial court on Defendant's motion to suppress, and the trial court announced in open court that Defendant's motion would be allowed. The trial court subsequently entered a written order which embodied the granting of Defendant's motion to suppress, included findings of fact consistent with the evidence, and concluded the investigatory stop of Defendant was unreasonable, unlawful, and in violation of Defendant's Fourth Amendment rights.

STATE v. HUGHES

[136 N.C. App. 286 (2000)]

The issue is whether the anonymous informant provided reliable information sufficient to justify the investigatory stop.[2]

"A police officer may conduct a brief investigatory stop of a vehicle, even though there is no probable cause for the stop, when justified by specific, articulable facts which would lead a police officer 'reasonably to conclude in light of his experience that criminal activity may be afoot.' " *State v. Battle*, 109 N.C. App. 367, 370, 427 S.E.2d 156, 158 (1993) (quoting *Terry v. Ohio*, 392 U.S. 1, 30, 20 L. Ed. 2d 889, 911 (1968)). These facts "must yield the 'substantial possibility that criminal conduct has occurred, is occurring, or is about to occur' in order for an investigatory stop to be valid." *Id.* (citations omitted). The officer making the investigatory stop is entitled to rely on information received from other officers, known as collective knowledge, in determining if criminal activity has occurred, is occurring, or is about to occur. *Id.* at 371, 427 S.E.2d at 159. Officers are also entitled to rely on tips given to them by known informants who have previously provided reliable information, and this information may itself provide the reasonable suspicion necessary to justify the stop. *Adams v. Williams*, 407 U.S. 143, 147, 32 L. Ed. 2d 612, 617 (1972). As a general proposition, information provided to police by anonymous persons cannot constitute *the* basis for reasonable suspicion. *Alabama v. White*, 496 U.S. 325, 329, 110 L. Ed. 2d 301, 308 (1990). An anonymous tip can, however, provide reasonable suspicion if "significant aspects" of the tipster's predictions about the future behavior of a person are subsequently corroborated by the police. *Id.* at 332, 110 L. Ed. 2d at 310. This would provide reason to believe "not only that the [anonymous] caller was honest but also that he was well informed," thus revealing sufficient indicia of reliability to justify the stop. *Id.*

In this case, the anonymous caller[3] to Matthews provided information that a dark-skinned Jamaican individual, weighing about 300 pounds, about 6 feet in height, approximately 25 years old, with a short haircut, clean cut, and wearing baggy pants, would be arriving on the weekend in Jacksonville on a bus from New York City about 5:30 p.m., carrying either no luggage or an overnight bag, traveling to North Topsail Beach by taxi or other prearranged transportation, and would possess cocaine and marijuana.

---

2. The State concedes there is not sufficient evidence in this case to support probable cause to arrest Defendant.

3. Although the informant is referred to in the evidence as "confidential" and "reliable," there is no evidence in this record to support that conclusion.

On Friday, 13 March 1998, the detectives went to the Jacksonville bus station and observed the 3:50 p.m. bus arriving from Rocky Mount, a common transit point from New York City. They observed an individual, walking from behind the bus, who "matched the exact description" provided by the anonymous caller. He was carrying a small hand bag and entered a taxicab, which drove south on Highway 17, in the general direction of North Topsail Beach.

Our review of this evidence convinces us that significant aspects of the anonymous informant's predictions about the future behavior of Defendant, properly relied on by Bryan and McKoy, under the collective knowledge rule, were verified by the detectives and, thus, exhibited sufficient indicia of reliability to justify the investigatory stop of Defendant. The trial court's conclusions, therefore, are not supported by its findings of fact. Accordingly, the trial court erred in granting Defendant's motion to suppress.

Reversed and remanded.

Judge WALKER concurs.

Judge TIMMONS-GOODSON dissents.

Judge TIMMONS-GOODSON dissenting.

I respectfully dissent. While the majority frames the issue as "whether the anonymous informant provided reliable information sufficient to justify the investigatory stop[,]" the issue is in fact whether competent evidence supports the trial court's findings of fact and whether those findings sustain the conclusions of law.

The scope of appellate review of an order suppressing evidence is strictly limited. *State v. Cooke*, 306 N.C. 132, 291 S.E.2d 618 (1982). The role of this Court on appeal by the State of an order suppressing evidence is to determine whether the underlying findings of fact of the trial court are supported by competent evidence. *Id.* Factual findings which are supported by competent evidence are deemed binding on appeal. *Id.* Furthermore, this Court shall not disturb the trial court's conclusions of law where they are supported by the findings of fact. *Id.*

The trial court made the following pertinent findings of fact:

1. That on March 13, 1998, between 11:00 a.m. and 11:30 a.m., Captain Matthews of the Onslow County Sheriff's Depart-

ment, Narcotics Division, received a telephone call from a person described as a confidential, reliable, informant stating that an individual by the nickname "Markie" would be coming to Jacksonville with powder cocaine and marijuana in his possession.

2. That Captain Matthews, who was not present to testify in court, told Detective Steve Imhoff . . . that this individual is a dark-skinned Jamaican from New York who weighs over three hundred pounds and is approximately six foot, one inch tall or taller, between twenty or thirty years of age.

. . . .

4. That Detective Imhoff testified that he never talked to the informant, never worked with the informant, never knew the informant's identity, and did not have any knowledge of the informant's past history or reliability.

5. That the informant's information did not include:

(a) The time the bus would arrive in Jacksonville.

(b) The name of the individual on the bus.

(c) The color, type and style of clothing that the individual would be wearing.

(d) Where the contraband substances would be located on the individual's person or property.

(e) How this information was obtained by the informant.

(f) When this information was obtained by the informant.

. . . .

11. That upon contacting the bus station, Detective Bryan was informed that one bus from New York had already arrived in Jacksonville and he did not observe an individual who matched the description . . . .

12. That Detective Bryan and Detective McAvoy waited for another bus which was to arrive from Rocky Mount, North Carolina at approximately 3:50 p.m.

13. That Detective Bryan, an officer with six years of experience, testified that suspects in other unrelated investigations sometimes arrived from New York to Jacksonville via Rocky Mount, North Carolina.

14. That Detective Bryan also testified that suspects in other unrelated investigations sometimes arrive from New York to Jacksonville through cities other than Rocky Mount.

. . . .

16. That when the Rocky Mount bus arrived at approximately 3:50 p.m. Detective Bryan's undercover vehicle was parked in a position where he could not observe the passengers exiting the door of the bus. He did not see the defendant exit the bus.

. . . .

27. That the Detectives did not verify the following information prior to the vehicle stop:

> (a) The defendant's name.
>
> (b) The defendant's past criminal record, if any.
>
> (c) The point of origination of defendant's bus.

. . . .

31. That at the time of the vehicle stop the defendant was not under arrest for any violation of law.

The above findings are based on competent evidence and are therefore binding on appeal. These findings, in turn, support the trial court's conclusion that the evidence should be suppressed and excluded from trial. Specifically, the trial court concluded as a matter of law:

> 1. That considering the totality of the circumstances, the information received by the detectives . . . did not contain specific and articulate facts which . . . reasonably justified the warrantless intrusion and the seizure of the defendant's person and property.
>
> . . . .
>
> 3. That considering the totality of the circumstances, the information received by the detectives . . . could easily be associated with many travelers . . . .
>
> . . . .
>
> 5. That the investigatory stop and the subsequent search and seizure of the defendant's person and property was unreasonable and unlawful and in violation of the defendant's rights . . . .

6. That the evidence seized as a result of these unreasonable warrantless searches . . . should be suppressed and excluded from evidence in the trial of these cases.

Because I believe the majority exceeded the scope of permissible appellate review and because I believe the competent evidence supports the court's findings of fact, which in turn sustain its conclusions of law, I respectfully dissent.