SAMMIE E. WILLIAMS, Petitioner v. NORTH CAROLINA DEPARTMENT OF ENVI-
RONMENT AND NATURAL RESOURCES, DIVISION OF COASTAL MANAGE-
MENT, and COASTAL RESOURCES COMMISSION, Respondents

No. COA00-677

(Filed 3 July 2001)

## 1. Environmental Law— wetlands—variance from CAMA— unnecessary hardship

The conclusion of Coastal Resources Commission that the denial of a landowner's application for a variance from the Coastal Area Management Act (CAMA) to permit construction of a fast freezer and storage unit building on wetlands property would not cause unnecessary hardship was not supported by substantial evidence and the Commission's findings because (1) the fact that the landowner owns other nearby property on which the building could be constructed is irrelevant and insufficient to support this conclusion; (2) evidence that the landowner has offered to make changes in his plans is not substantial evidence that a strict application of CAMA will not result in unnecessary hardship when the record does not indicate that the Commission considered the alternatives suggested by the landowner; and (3) the Commission failed to find facts as to the impact of strict application of CAMA on the landowner's ability to make reasonable use of his property. N.C.G.S. § 113A-120.1.

## 2. Environmental Law— wetlands—variance from CAMA— conditions peculiar to property

The conclusion of the Coastal Resources Commission in denying a landowner's application for a variance from the Coastal Area Management Act to permit construction of a building on wetlands property that the property was not affected by "conditions peculiar" to it alone was not supported by substantial evidence in the record because (1) evidence that a septic tank and two residences had been removed from the wetlands does not show that any conditions peculiar to this land have dissipated due to the long absence of residences on the land when the evidence was unclear as to how long the residences have been removed and the period of time could be less than two years prior to the filing of the petition for a variance; and (2) there is no mention in the stipulated facts that this particular parcel of property is similar to other nearby properties or that wetlands regularly reemerge when structures are removed.

**3. Environmental Law— wetlands—variance from CAMA— reemergence of wetlands—anticipation by CRC**

The conclusion of the Coastal Resources Commission (CRC) in denying a landowner's application for a variance from the Coastal Area Management Act to permit construction of a building on wetlands property that the reemergence of wetlands over time was anticipated by the CRC at the time wetlands regulations were adopted was unsupported by substantial evidence in the record. Rather, 15A N.C.A.C. 7-J.0211 clarifies that the CRC anticipated allowing landowners to rebuild nonconforming or unacceptable uses if the replacement project complied with this regulation.

**4. Environmental Law— wetlands—variance from CAMA— spirit, purpose and intent of CRC rules—conclusion unsupported and unnecessary**

A conclusion of the Coastal Resources Commission (CRC) in denying a landowner's application for a variance from the Coastal Area Management Act to construct a fast freezer and storage unit building on wetlands property that the proposed development was not within the spirit, purpose and intent of the CRC's rules was unsupported by substantial evidence and was unnecessary because the CRC concluded that this property did not meet the three-part test set forth in N.C.G.S. § 113A-120.1.

**5. Evidence— judicial notice—location of parcel of land**

The trial court did not err by taking judicial notice that the "parcel of land at issue is located in downtown Englehard," because the stipulated facts already state the property is in Englehard.

**6. Environmental Law— wetlands—variance from CAMA— allowance by superior court—absence of authority**

When the superior court reversed the Coastal Resources Commission's (CRC) denial of a landowner's application for a variance from the Coastal Area Management Act to permit construction of a building on wetlands property, the court lacked authority to allow the variance because it is for the CRC to consider and modify applications for permits and variances.

Appeal by respondents from order entered 16 February 2000 by Judge William C. Griffin, Jr. in Hyde County Superior Court. Heard in the Court of Appeals 20 April 2001.

**WILLIAMS v. N.C. DEP'T OF ENV'T & NATURAL RES.**

[144 N.C. App. 479 (2001)]

*Pritchett & Burch, P.L.L.C., by Lars P. Simonsen, for petitioner-appellee.*

*Attorney General Michael F. Easley, by Special Deputy Attorney General James P. Longest, Jr. and Assistant Attorney General Mary Penny Thompson, for respondent-appellants.*

EAGLES, Chief Judge.

Appellants appeal from the Superior Court's order reversing the Coastal Resources Commission's, (hereinafter "CRC"), decision in an expedited hearing process. The CRC's order denied appellee's request for a variance. The Superior Court's order found that based on the whole record, there was not substantial evidence to support the CRC's conclusions of law. After careful review, we affirm the reversal. In its order, the Superior Court also granted the appellee a variance. Because we believe granting a variance here is beyond the purview of the Superior Court, we reverse and remand to the Superior Court for further review.

Appellee applied for a permit to build a "fast freezer" and storage unit building on his property in Englehard, Hyde County, North Carolina. The property is located at the intersection of S.R. 1101 and S.R. 1102 approximately 250 feet from the shoreline of Far Creek. The property is bordered on the east side by a manmade canal, Jarvis Ditch. Currently several wetland species of vegetation exist on the property and the U.S. Army Corps of Engineers designates the entire property as Section 404 wetlands pursuant to their authority under the Clean Water Act. 33 U.S.C. § 1344. Section 404 gives jurisdiction to the U.S. Army Corps of Engineers to create lines "essential to the preservation and protection of harbors" and beyond those lines "no piers, wharves, bulkheads, or other works shall be extended or deposits made," except under such regulations as may be prescribed from time to time . . . ." 33 U.S.C. § 404.

This property "averages 1.5 feet above mean sea level." In order to build the fast freezer and storage unit building on the property, appellee requested permission to fill in approximately one-half acre of his property. Appellee further proposed to build a 1.5 foot high, 294 foot long bulkhead along the perimeter of the property. From at least 1954 until at least 1978 two residences and other structures existed on the property. Those structures were removed at some time before 1995.

Appellee's application for a permit was denied by the North Carolina Department of Environment and Natural Resources (hereinafter "NCDENR") on 17 April 1997. Appellee filed a petition for a variance before the CRC 22 July 1998. Appellee's variance request was heard utilizing an expedited process on 29 January 1999. The variance hearing was conducted using oral arguments and stipulated facts. On 29 February 1999 the CRC filed an order concluding in part:

4. Application of 15A NCAC 7H.0208(a) and the Dredge and Fill Act, N.C.G.S. § 113-229, will not result in practical difficulties or unnecessary hardship to Petitioner in that alternatives for siting and design of the proposed facility exist that would reduce or eliminate the wetlands impacts of the project.

5. There is no hardship caused by conditions peculiar to Petitioners' property in that wetlands occur throughout the coastal area and reemergence of wetland vegetation once structures have been removed from a [sic] low lying areas adjacent to surface waters is not unusual.

6. At the time 15A NCAC 7H.0205 and .0208 were adopted, the Commission reasonably anticipated that the actual boundaries of a coastal wetland could change over time as wetland vegetation migrated landward or reestablished in a disturbed area.

7. The proposed development is not within the spirit, purpose and intent of the Commission's rules and that the amount of wetland loss, and loss of its resource values, can be reduced or eliminated by redesigning or relocating the facility.

Appellee petitioned the Superior Court for judicial review of the CRC's order. The Superior Court, held that the "agency's conclusion[s] of law and decision are unsupported by substantial evidence admissible under G.S. 150B-29(a), 150B-30, or 150B-31 in view of the entire record as submitted and are arbitrary or capricious . . . ."

Appellants argue that the Superior Court failed to use the proper standard of review and substituted its judgment for that of the CRC. Judicial review of a final agency decision is conducted in Superior Court pursuant to the Administrative Procedure Act. G.S. 150B-43. The standard of review is as follows:

[T]he court reviewing a final decision may affirm the decision of the agency or remand the case for further proceedings. It may

also reverse or modify the agency's decision if the substantial rights of the petitioners may have been prejudiced because the agency's findings, inferences, conclusions, or decisions are:

(1) In violation of constitutional provisions;

(2) In excess of the statutory authority or jurisdiction of the agency;

(3) Made upon unlawful procedure;

(4) Affected by other error of law;

(5) Unsupported by substantial evidence admissible under G.S. 150B-29(a), 150B-30, or 150B-31 in view of the entire record as submitted; or

(6) Arbitrary or capricious.

G.S. 150B-51(b) (1987); *Powell v. N.C. Dept. of Transportation*, 347 N.C. 614, 622, 499 S.E.2d 180, 184-85 (1998).

The proper standard of review by the Superior Court depends upon the particular issues presented by the appeal. *ACT-UP Triangle v. Commission for Health Services*, 345 N.C. 699, 706, 483 S.E.2d 388, 392 (1997); *Brooks, Commr. of Labor v. McWhirter Grading Co.*, 303 N.C. 573, 580, 281 S.E.2d 24, 28 (1981). When the issue on appeal is whether the agency's decision was supported by substantial evidence or whether the agency's decision was arbitrary and capricious, the reviewing court must apply the "whole record" test. *ACT-UP Triangle*, 345 N.C. at 706, 483 S.E.2d at 392; *Associated Mechanical Contractors v. Payne*, 342 N.C. 825, 832, 467 S.E.2d 398, 401 (1996); *Powell*, 347 N.C. at 623, 499 S.E.2d at 185. A "whole record" review "does not allow the reviewing court to replace the [agency's] judgment as between two reasonably conflicting views," but rather requires the court to determine whether there was substantial evidence to support the conclusions by taking all the evidence, both supporting and conflicting, into account. *Powell*, 347 N.C. at 623, 499 S.E.2d at 185; *Associated Mechanical Contractors*, 342 N.C. at 832, 467 S.E.2d at 401. Substantial evidence is "more than a scintilla" and is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Lackey v. Dept. of Human Resources*, 306 N.C. 231, 238, 293 S.E.2d 171, 176 (1982); *Norman v. Cameron*, 127 N.C. App. 44, 48, 488 S.E.2d 297, 300 (1997).

In this case, appellee asserted that the stipulated facts were unsupported by substantial evidence in view of the entire record, and thus do not support the conclusions of law. The Superior Court "should have, therefore, reviewed petitioner's alleged errors *de novo* and in accordance with the 'whole record' test." *Hedgpeth v. North Carolina Division of Services for the Blind,* 142 N.C. App. 338, 543 S.E.2d 169, 176 (2001). In its order the Superior Court stated the correct standard of review. Now, we will apply the whole record test to the CRC decision.

### I. The CRC's Conclusions of Law

The General Assembly provided the circumstances under which a landowner whose "major development" permit has been denied, may obtain a variance:

> Any person may petition the Commission for a variance granting permission to use his land in a manner otherwise prohibited by rules, standards, or limitations prescribed by the Commission, or orders issued by the Commission, pursuant to this Article. When it finds that (i) practical difficulties or unnecessary hardships would result from strict application of the guidelines, rules, standards, or other restrictions applicable to the property, (ii) such difficulties or hardships result from conditions which are peculiar to the property involved, (iii) such conditions could not reasonably have been anticipated when the applicable guidelines, rules, standards, or restrictions were adopted or amended, the Commission may vary or modify the application of the restrictions to the property so that the spirit, purpose, and intent of the restrictions are preserved, public safety and welfare secured, and substantial justice preserved. In granting a variance, the Commission may impose reasonable and appropriate conditions and safeguards upon any permit it issues.

G.S. 113A-120.1 (1989). If the landowner cannot meet each of the three enumerated requirements, the variance must not be granted. *Id.* If the landowner meets all three requirements, the commission may then grant, vary or modify the variance such that the "spirit, purpose, and intent of the restrictions are preserved . . . ." *Id.*

The appellee argues that the Superior Court erred when reversing the CRC because there was substantial evidence in the record to support each of the CRC's conclusions of law. Because we, like the Superior Court, apply the whole record test in review, it is necessary for us to analyze each of the contested CRC conclusions of law.

**WILLIAMS v. N.C. DEP'T OF ENV'T & NATURAL RES.**

[144 N.C. App. 479 (2001)]

## A. Unnecessary Hardship

[1] The CRC concluded that the first variance element was not met, stating:

> 4. Application of 15A NCAC 7H.0208(a) and the Dredge and Fill Act, N.C.G.S. § 113-229, will not result in practical difficulties or unnecessary hardship to Petitioner in that alternatives for siting and design of the proposed facility exist that would reduce or eliminate the wetlands impacts of the project.

Appellants argue that conclusion of law #4 is substantially supported by certain stipulated facts: appellee owns other property in the area, appellee submitted possible revisions of the plan and appellee is willing to re-design the facility. Applying the whole record test, we disagree and hold that these stipulated facts do not support conclusion of law #4. First, appellants argue that since this landowner owns other land nearby, then there is no unnecessary hardship occurring since the landowner has other available development sites. Whether strict application of the Coastal Area Management Act, (hereinafter "CAMA"), places an "unnecessary hardship" on a parcel of property, depends upon the unique nature of the property; not the landowner. If "hardship" stemmed from the situation of the landowner, then those persons owning less land would have an easier time showing unnecessary hardship than those owning more than one parcel of land. Similarly situated persons would be treated differently, giving rise to equal protection of law issues. *City of Cleburne v. Cleburne Living Ctr., Inc.*, 473 U.S. 432, 87 L. Ed. 2d 313 (1985). Accordingly we hold that whether or not the landowner owns other property is irrelevant and insufficient to support CRC's conclusion of law #4.

The other facts asserted by appellants are also insufficient to support conclusion of law #4. Appellants argue that the evidence that appellee has offered to make changes to his plans is substantial evidence that strict application of CAMA will not result in "unnecessary hardship." On this record, we cannot agree. This record is devoid of any indication that the CRC considered the alternatives suggested by the appellee. Appellants assert in their brief that appellants have accepted appellee's proposals for redesign of the site. Their assertion is based solely on the fact that appellee's conciliatory proposals appear as part of the stipulations in this record. The assertion is not persuasive.

Further, the CRC failed to find facts which address whether the appellee has been denied reasonable and significant use of his property. The Court of Appeals of Maryland in *Belvoir Farms Homeowners Assoc., Inc. v. John C. North, II*, 734 A.2d 227 (1999), in the context of zoning regulations, explained the theory of "unnecessary hardship" as whether the "restriction when applied to the property in the setting of its environment is so unreasonable as to constitute an arbitrary and capricious interference with the basic right of private ownership." Id. at 237; *Marino v. Mayor of Baltimore*, 137 A.2d 198, 202 (1957). The *Belvoir Farms* court explored in depth the various jurisdictions' definitions of "undue hardship." In Virginia, "unnecessary hardship" is statutorily defined as "effectively prohibit[s] or unreasonably restrict[s] the utilization of the property." Va. Code Ann. § 15.2-2309. The *Belvior* court noted that authorities throughout the country define "unnecessary, unreasonable, and unwarranted hardship" as the "denial of beneficial or reasonable use or the denial of all viable economic use, the unconstitutional taking standard." *Belvior*, 734 A.2d at 240. However, the *Belvior* court also noted that variances may be granted in cases where the application of zoning ordinances would **not** result in unconstitutional taking. *Id.* The *Belvior* court adopted the law of Virginia, stating "[i]t is important to note here that the purpose of a variance is to protect the landowner's rights from the unconstitutional application of zoning law." *Id.; Packer v. Hornsby*, 267 S.E.2d 140, 142 (Va. 1980). The *Belvior* court held that although the definitions were similar, the "unnecessary hardship" standard is **not** the same as an "unconstitutional taking" standard. *Belvior*, 734 A.2d at 240. The *Belvior* court further stated that it is a question of fact for the zoning commission to find whether a property owner has been denied "reasonable and significant" use of his property. *Belvior*, 734 A.2d at 240.

Our Supreme Court has held, in the context of zoning, that pecuniary loss alone is not enough to show an "unnecessary hardship" requiring a grant of a variance. *Lee v. Board of Adjustment*, 226 N.C. 107, 37 S.E.2d 128 (1946). In *Natrella v. Board of Zoning Appeals of Arlington County*, 345 S.E.2d 295 (Va. 1986), the Supreme Court of Virginia stated:

> The authorities generally agree that *financial loss*, standing alone, cannot establish an extraordinary or exceptional situation or hardship approaching confiscation sufficient to justify the granting of a variance of a zoning regulation, but it *is a factor or an element to be taken into consideration and should not be ignored.*

*Id.* at 300 (citation omitted). Since "unnecessary hardship" is the initial inquiry as to whether a variance from a zoning ordinance is appropriate, as it is for CAMA ordinances, we find these cases persuasive. We hold that to determine whether a parcel of property suffers from unnecessary hardship due to strict application of CAMA, the CRC must make findings of fact and conclusions of law as to the impact of the act on the landowner's ability to make reasonable use of his property. This Court can find no findings of fact as to this question. As there are insufficient findings of fact as to "unnecessary hardship," we hold that conclusion of law #4 is not supported by substantial evidence. G.S. 150B-51(b).

## B. "Peculiarity"

[2] The CRC next concluded that this property is not affected by "conditions peculiar" to it alone, stating:

> 5.There is no hardship caused by conditions peculiar to Petitioners' property in that wetlands occur throughout the coastal area and reemergence of wetland vegetation once structures have been removed from a low lying areas adjacent to surface waters is not unusual.

Appellants argue that the Superior Court erred when it held that there was not substantial evidence of record to support CRC conclusion of law #5. Appellants assert that most of the stipulated facts support this conclusion.

Certainly, all parties agree that wetlands species exist on this property. Appellee asserted that this property is affected by conditions peculiar to it because it has a septic tank situated on it and from at least 1952 to between 1978 and 1995 there were two residences and their driveways situated upon it. Appellants argue that any conditions peculiar to this land have dissipated due to the "long absence of residences" on this property. The record is unclear as to when the residences were actually removed. When the evidence is unclear as to how long the residences have been removed and the minimum period of time could be less than two years prior to filing the petition for variance, we are reluctant to hold that this is substantial evidence that any conditions peculiar to the land have dissipated due to the "long absences of residences."

Appellants additionally argue that the stipulated facts referring to reports completed by the Division of Marine Fisheries, the Division of Water Quality, the Wildlife Resources Commission, and the National

Marine Fisheries Service are sufficient to support the conclusion that the land is not affected by conditions peculiar to it. Since those reports are not part of this record, it is impossible for this Court to review them. Further, there is no mention in the CRC's stipulated facts that this particular parcel of property is similar to other nearby properties or that wetlands regularly reemerge when structures are removed. The stipulated facts discuss the importance of wetlands. The stipulations also indicate that the commissions were concerned that the project would result in the loss of wetlands. The Clean Water Act and the Code of Federal Regulations provide that fill material should not be placed in wetlands if a practicable alternative exists. 40 C.F.R. § 230.10(a); 33 U.S.C. § 1344 *et seq.*

However, the stipulations do not mention the presence or absence of conditions peculiar to wetlands on this property. The stipulated facts do not mention the reemergence of wetlands on property when structures have been removed. Accordingly, based on a review of the whole record, there is not substantial evidence upon which to base CRC conclusion of law #5. *Powell,* 347 N.C. at 623, 499 S.E.2d at 185; G.S. 150B-51(b).

### C. CRC's Anticipation

[3] The CRC further concluded that the reemergence of wetlands over time was anticipated by the CRC, stating:

6. At the time 15A NCAC 7H.0205 and .0208 were adopted the Commission reasonably anticipated that the actual boundaries of a coastal wetland could change over time as wetland vegetation migrated landward or reestablished in a disturbed area.

As discussed above, the record is devoid of any stipulated facts which support CRC conclusion of law #6. 15A N.C.A.C. 7H.0205 and .0208 make no mention of the migration of coastal wetlands over time. Appellant argues that since the commission designated parking lots, residences, businesses and private roads as "unacceptable," it is substantial evidence that the commission decided not to replace those items once they were removed and wetlands reemerged. When the General Assembly enacted CAMA, it created the CRC and delegated to it the power to regulate wetlands. Appellants contend that when CAMA and the ensuing administrative ordinances were passed, it was the intent of the CRC to prevent destroyed structures from being rebuilt if wetlands were in any way involved. Appellants contend that if appellee had requested a variance to re-construct resi-

dences and driveways on this property, the CRC would have not permitted the construction. Based on the language of North Carolina's Administrative Code, we disagree.

North Carolina's Administrative Code addresses those properties not in conformance with CAMA regulations at the time it was passed. 15A N.C.A.C. 7J.0211 states:

> A non-conforming structure is any structure within an AEC other than Ocean Hazard and Inlet Hazard AECs that is inconsistent with current CRC rules, and, was built prior to the effective date(s) of the rule(s) with which it is inconsistent. Replacement of such structures **shall be allowed** when all of the following criteria are met:
>
> (1) the structure will not be enlarged beyond its original dimensions;
>
> (2) the structure will serve the same or similar use;
>
> (3) there are no practical alternatives for replacing the structure to provide the same or similar benefits in compliance with current rules; and
>
> (4) the structure will be rebuilt so as to comply with current rules to the maximum extent possible.

*Id.* (emphasis added). Appellee here is not requesting to rebuild these residences. However, this regulation does clarify that the commission anticipated allowing property owners to rebuild non-conforming or "unacceptable" uses if the replacement project complied with 15A N.C.A.C. 7J.0211. Appellants' argument that the CRC anticipated that the boundaries of coastal wetlands could change over time and in such cases the CRC would not allow rebuilding, fails. Appellant makes no alternative argument and we can find no evidence of record suggesting that the General Assembly or the CRC anticipated the reemergence of wetlands when the statute was passed. Accordingly, there is not substantial evidence of record to support conclusion of law #6. *Powell*, 347 N.C. at 623, 499 S.E.2d at 185; G.S. 150B-51(b).

### D. Spirit, Purpose and Intent of the CRC's Rules

[4] The CRC's final relevant conclusion of law (No.7) is as follows:

> 7. The proposed development is not within the spirit, purpose and intent of the Commission's rules and that the amount of wet-

land loss, and loss of its resource values, can be reduced or eliminated by redesigning or relocating the facility.

At the outset we note that both parties seem to assert that whether the proposed development is within the spirit, purpose and intent of the Commission's rules is a fourth element under G.S. 113A-120.1. The statute indicates that when the three enumerated elements for a variance are met, the "Commission may vary or modify the application of the restrictions to the property such that the spirit, purpose and intent" of the commission's rules are preserved. *Id.* The statute further states that the "Commission may impose reasonable and appropriate conditions and safeguards upon any permit it issues." *Id.* Because the CRC concluded that this property did not meet the elements of the three part test, it was unnecessary for the CRC to make conclusion of law #7. None of the stipulated facts state that appellee's proposals for redesign of the facility, if approved and constructed, would actually reduce wetland loss. As noted above, whether this landowner may relocate the facility on his other property is an improper consideration. The only stipulated facts mentioning redesign of the facility are those regarding the appellee's proposals. The CRC has not accepted those proposals and does not indicate anywhere in this record that a redesign would (1) actually reduce wetland loss or (2) be acceptable to CRC. Based on a review of the whole record, we are unable to find substantial evidence to support this conclusion of law. G.S. 150B-51(b).

Because there is not substantial evidence of record to support the CRC's conclusions of law #'s 4, 5 and 6, we affirm the Superior Court's reversal of the CRC's order denying petitioner's request for a variance.

## II. Judicial Notice

[5] Appellants next argue that the Superior Court improperly took judicial notice that the "parcel of land at issue is located in downtown Englehard." Our review of an error of law is *de novo*. Hedgpeth, 142 N.C. App. at 346, 543 S.E.2d at 174. The stipulated facts state in part:

Mr. Sammie E. Williams (hereinafter "Petitioner") owns a tract of land (hereinafter "property") approximately one acre in size, located in Englehard, Hyde County, North Carolina, at the eastern corner of the intersection of N.C.S.R. 1102 and N.C.S.R. 1101, approximately 250 feet from the shoreline of Far Creek . . . .

It is stipulated that the property is *in* Englehard. Appellants argue that in order to present new evidence in a judicial review hearing, a party must apply to the court pursuant to G.S. 150B-49. If the court finds that the evidence is material and not cumulative, the court may remand the case. However, appellate courts may take judicial notice of facts that are not subject to reasonable dispute. Our Supreme Court took judicial notice of the typical hours of the court system in *State v. Thompson*, 349 N.C. 483, 508 S.E.2d 277 (1998). In *State v. Hughes*, 136 N.C. App. 286, 524 S.E.2d. 70, *rev'd on other grounds*, 353 N.C. 200, 539 S.E.2d 625 (2001), this Court took judicial notice of the day of the week. In *State v. McKeithan*, 140 N.C. App. 422, 432, 537 S.E.2d 526, 533, *disc. rev. denied*, 353 N.C. 392, S.E.2d (2001), this Court took judicial notice of the time of day the home was broken into. That the Superior Court took notice that the property was in downtown Englehard, when it was stipulated the property was *in* Englehard, even if error—is harmless. The CRC's stipulated facts do not support CRC's conclusions of law #'s 4, 5 and 6 and the CRC was properly reversed by the Superior Court.

### III. "Takings"

NCDENR also excepts to the Superior Court's conclusion of law #5:

> 5. The substantial rights of the petitioner have been prejudiced in that the Coastal Resources Commission's decision appears to deprive the petitioner of all economically beneficial or productive use of his land, without just compensation.

The Superior Court's conclusion of law #5 appears to indirectly deal with the issue of whether there was a taking of appellee's property. There is no "taking" issue in this appeal. The General Assembly has provided for an exclusive method of challenging the CRC's final decision as a taking. G.S. 113A-123(b). The appellee here has not followed the appropriate procedure to obtain a takings remedy. We note that the Superior Court's order merely indirectly alluded to a taking and did not make any award of compensation. Accordingly, we hold that this statement is mere dicta, having no effect on this proceeding or any other.

### IV. Superior Court's Grant of a Variance

[6] The Superior Court not only reversed the CRC's order which denied appellee's request for a variance, but also purported to grant the variance with certain restrictions. G.S. 150B-51(b) permits a

Superior Court to affirm, reverse, remand or modify the decisions of administrative hearings. Here, the Superior Court was without power to issue a variance to the petitioner. *Waggoner v. Board of Alcoholic Control*, 7 N.C. App. 692, 173 S.E.2d 548 (1970). G.S. 113A-120.1 states that the CRC "may impose reasonable and appropriate conditions and safeguards upon any permit it issues." *Id.* "Ordinarily courts cannot either grant or deny variances." *Belvoir Farms*, 734 A.2d at 234. Thus it is for the CRC to consider and modify applications for permits and variances so that the

> spirit, purpose, and intent of the restrictions are preserved, public safety and welfare secured, and substantial justice preserved. In granting a variance, the Commission may impose reasonable and appropriate conditions and safeguards upon any permit it issues.

G.S. 113A-120.1. Accordingly, we hold that on this record, the Superior Court erred when it purported to issue a variance.

## V. Conclusion

In conclusion, we hold that based on a whole record review, the CRC's conclusions of law #'s 4, 5 and 6 are not based on substantial evidence. Further, we hold that an appellate court may take judicial notice of facts which are not subject to reasonable dispute. Finally we hold that the granting of permits and variances is exclusively within the CRC's purview.

Accordingly, the decision of the Superior Court is

Affirmed in part, vacated in part and reversed and remanded in part for further proceedings not inconsistent with this opinion.

Judges McCULLOUGH and SMITH concur.