NAOMI RUTH LEA, PLAINTIFF-RESPONDENT, v. ROBERT
M. LEA, DEFENDANT-APPELLANT.

Argued February 14, 1955—Decided March 14, 1955.

(1)

2

*Mr. Joseph Tomaselli* argued the cause for the appellant (*Messrs. Malandra and Tomaselli,* attorneys).

*Mr. Morton C. Sleinberg* argued the cause for the respondent.

The opinion of the court was delivered by

OLIPHANT, J.   This is an appeal from a judgment of the Appellate Division, 32 *N. J. Super.* 333 (1954), which affirmed a judgment of the Chancery Division, Superior Court, 28 *N. J. Super.* 290 (1953), on the ground that a judgment of the New York Supreme Court granting

the plaintiff-respondent an absolute divorce on the ground of adultery and setting aside a decree of divorce in favor of the appellant of the Chancery Court of the State of Arkansas was *res adjudicata* of the issues raised below and further ordering the appellant to pay the respondent such arrearages of alimony under the New York judgment as would be found due on remand of the cause to the Chancery Division. The appeal is here as of right. *R. R.* 1:2–1(*a*).

While it is true, as the Appellate Division indicated, that a party has no legal status to attack the validity of a divorce decree of a sister state in a direct proceeding instituted for that specific purpose when neither party was a resident of this State at the time the decree of divorce was rendered, there can be no debatable question of the right of the plaintiff-respondent to enforce a judgment of a foreign state or the corollary right of the defendant-appellant to challenge the validity of such judgment upon the ground of fraud or lack of jurisdiction of the foreign tribunal which rendered the judgment. *Floyd v. Floyd,* 95 *N. J. Eq.* 661, 665 (*E. & A.* 1924). Such a judgment is always open to a collateral attack, either by defense or otherwise, and our courts may, subject to the requirements of the Full Faith and Credit Clause of the United States Constitution, examine the record and proofs to ascertain whether the judgment is invalid on either of these grounds. *Morrissey v. Morrissey,* 1 *N. J.* 448, 452 (1949).

The Full Faith and Credit Clause merely inhibits such inquiry when the defendant (1) appeared in such foreign proceeding and contested the issues; (2) or appeared and admitted the domicile; (3) or was personally served in such state so that it clearly appears from the record that the jurisdictional requirements applicable to both the subject matter and the person were present when the judgment was entered. *Robison v. Robison,* 9 *N. J.* 288, 291 (1952); *Woodhouse v. Woodhouse,* 11 *N. J.* 225, 228 (1953); *Woodhouse v. Woodhouse,* 17 *N. J.* 409 (1955).

However, where the jurisdiction of the foreign tribunal is predicated upon a fiction or alleged fact of domicile of the plaintiff, and substituted service, in lieu of personal ser-

vice, is used in an attempt to secure jurisdiction of a non-resident defendant, a state not a party to exertion of such judicial authority but affected by it has a right, when asserting its own unquestioned authority over its domiciliaries, to ascertain the truth of the existence of the crucial fact of domicile upon which the foreign judgment or decree is based. The finding of the fact of domicile by *any* state does not foreclose *all the other states* in the protection of the rights of the domiciliaries in their relations to their social institutions. *Williams v. North Carolina (2nd case)*, 325 *U. S.* 226, 65 *S. Ct.* 1092, 89 *L. Ed.* 1577 (1945).

The cause of action asserted here by the plaintiff-respondent is predicated on the judgment of divorce *a vinculo* of the Supreme Court of New York which refused to give full faith and credit to the Arkansas decree. The defendant-appellant by way of defense attacks this judgment and claims (1) that the Arkansas decree is entitled to full faith and credit and its defense of *res adjudicata* should have been upheld by the New York court; (2) that the New York judgment is void for lack of due process since he was not served personally in that state but in Louisiana; (3) that the Arkansas decree was a complete bar to the New York judgment.

■ Both parties are now domiciliaries of this State and both rely on decrees or judgments of foreign states, so that the jurisdiction has been assumed by our courts is pursuant to *N. J. S.* 2A :34–23 and possibly under *N. J. S.* 9 :2–2 if the minor son of the marriage is not emancipated. In each of the foreign states a form of substituted service was directed to the defendants, neither of whom appeared; thus we are not foreclosed from examining the fact of the domicile of the plaintiff relied on by those courts for jurisdiction. *Williams v. North Carolina, supra.*

■■ The first question to be determined is the validity of the Arkansas decree which appellant asserts is entitled to full faith and credit. The burden of establishing the fact of domicile is upon the party who relies on it. Domicile is factual and each case must be evaluated and determined by its own facts and circumstances.

The proofs before this court are more complete since the appellant testified here. They clearly and definitely indicate that the appellant did not establish a domicile in Arkansas sufficient to invest the courts there with jurisdiction for purpose of divorce. The proofs out of the mouth of the appellant are sheer legal whimsy and come close to being unbelievable. He admitted living in his trailer in Araby, La. He then testified he drove a car and trailer over to Hansburg, Ark. and parked the trailer in a parking lot; that on many other days he commuted to his work in Louisiana, a trip that took five or six hours in either direction; that he left the trailer in a parking lot for several weeks while on an assignment in California. An attempt was made through the cross-examination of his son to elucidate some detail of corroboration but this failed. Domiciles and trailers are pretty close to being the opposite ends of the tether. Gypsies from time immemorial have been considered nomads without a domicile or country, but while the appellant here is not a gypsy, his domicile in Arkansas was a mere sham and we concur in the finding of the New York Supreme Court that the Arkansas decree was a nullity.

That brings us to the second jurisdictional question arising out of the finding of the New York court that the appellant was a domiciliary of that state when its judgment was entered. Since the respondent was a domiciliary of that state, that court had jurisdiction to grant a divorce *a vinculo*, if the Arkansas decree was a nullity, as that court and our courts have so found.

The appellant challenges the jurisdiction of the New York court to include in and enter a judgment *in personam* for alimony for his wife and support for his son on the ground that he was not served with process in the State of New York. Service of the summons and complaint in the New York action was admittedly made upon the appellant personally in New Orleans, La.

This service was held by the New York court to give *in personam* jurisdiction of the appellant by virtue of the provisions of the New York Civil Practice Act, section 235,

which provides that where the complaint demands judgment annulling a marriage, or for divorce, or a separation, or a sum of money only, service may be made outside of the state on a defendant domiciled in New York specifying the designated persons and officers authorized to serve and return such process.

In *Milliken v. Meyer*, 311 *U. S.* 457, 61 *S. Ct.* 339, 85 *L. Ed.* 278 (1940), such service was held to be due process. In that case the court, 311 *U. S.*, at *pages* 463, 464, 61 *S. Ct.*, at *pages* 342, 343, said:

"Its adequacy so far as due process is concerned is dependent on whether or not the form of substituted service provided for such cases and employed is reasonably calculated to give him actual notice of the proceedings and an opportunity to be heard. If it is, the traditional notions of fair play and substantial justice (*McDonald v. Mabee* [243 *U. S.* 90, 37 *S. Ct.* 343, 61 *L. Ed.* 608, *L. R. A.* 1917F 458] *supra*) implicit in due process are satisfied.

\*       \*       \*       \*       \*       \*       \*       \*

The responsibilities of that citizenship arise out of the relationship to the state which domicile creates. That relationship is not dissolved by mere absence from the state. The attendant duties, like the rights and privileges incident to domicile, are not dependent on continuous presence in the state. One such incidence of domicile is amenability to suit within the state even during sojourns without the state, where the state has provided and employed a reasonable method for apprising such an absent party of the proceedings against him."

However, in order for that part of the New York judgment to be entitled to full faith and credit the appellant must have been domiciled in New York at the time, as the New York court found. This finding the appellant challenges in this action. Since personal service on the defendant was not had in New York we shall examine the question of domicile.

The Chancery Division found as a fact that the appellant was domiciled in the State of New York and that the New York judgment was entitled to full faith and credit in this State. The Appellate Division assumed it was bound by the New York finding and affirmed the trial court's finding for that reason.

The question is a close one. The parties were married in 1925 and lived in the State of New York from 1925 until 1942. The appellant has been employed by the Federal

Immigration Service since 1931. At times he was assigned to duties at Massena and Ogdenburgh, New York, and for several years the family lived at the latter place on a farm purchased by appellant. In 1942 he was transferred to the Boston area and lived for about two years at Revere, Mass., having sold the farm in New York. In 1944 he was transferred to New Orleans, La. They were moved at government expense to Araby, La., and finally rented a house where they lived from November 1944 until June 1945.

At that time the wife and son went to New York, which they testified was at the insistence of the appellant and with his approval, so that the child could see the appellant's mother who was dying and his wife could be of some assistance there. He testified his wife left him but he paid the fare of both and for a period up to about the time of the Arkansas decree sent money for their support. His mother eventually died and he came on for the funeral, at which time he informed the respondent that there was no place available to rent in the New Orleans area and if he found a place he would send for them. It appears that during the entire period after his transfer to New Orleans the housing situation was acute. The family went on to New York, the furniture was put in storage, and shortly thereafter by common agreement some of the furniture was sold and the clothing and balance of the furniture was sent on to the wife and boy in New York.

At about this time the appellant was temporarily transferred to California and he does not deny that he suggested in a letter to them that his wife and boy should continue to stay on in New York. Practically on his return to Louisiana from California he undertook the steps heretofore described to obtain his divorce in Arkansas. The decree was granted on July 22, 1946, and on August 31, 1946 he was married at Gretna, La. to his present wife whom he had met and became enamored of while his family was residing in New York at his direction.

At this point the wife became suspicious of his insistence that she stay on in New York and she and the son unexpect-

edly returned to Louisiana late in July 1946. He made some excuses about the difficulty of finding quarters for them, but then at the end of several days he informed her and the boy of his divorce in Arkansas.

It is clear that the appellant's original domicile was in New York, though the proofs as to domicile subsequent to his leaving the State of New York in 1942 are susceptible of a conclusion that he could have intended to establish a domicile at Revere, Mass. and New Orleans, La. up to the time that he sent his family to New York. This is the critical point of time in reference to the question here.

The domicile of a wife and children is that of her husband, in the absence of a marital offense which would create in her a right to a separate domicile. But the fact of domicile is largely a matter of intention and a paramount fact to be considered is the intention on the part of the husband to establish a home for his family. *In re Fisher's Will,* 13 *N. J. Super.* 48, 53 (*App. Div.* 1951). The fact where a man has his family is a very important and most times a controlling factor on the question of domicile. *Valentine v. Valentine,* 61 *N. J. Eq.* 400 (*Ch.* 1901).

Conceding that the domicile of the wife and children must follow that of the husband, it seems that it should follow as a corollary of that proposition that if the husband orders and directs his wife to establish a home in a certain place, then that place is the domicile of the husband and his family unless there is clear and convincing proof of a contrary *bona fide* intention. We do not consider the chicanery engaged in by this appellant in Louisiana and Arkansas proof of a *bona fide* intention to establish a family domicile there during the period in question. Even conceding that the appellant has never been in the State of New York, except to pass through, since 1942, he was under a paramount duty to supply a home for his wife and child and such a home was established at his direction, insecure as it was, in New York. We, therefore, conclude that the family domicile and the domicile of the appellant was in the State of New York, and the jurisdiction obtained by the New York Supreme

Court sustains the *in personam* judgment against the appellant as a domiciliary of that state.

The appellant insists that the New York decree of divorce with respect to alimony is not entitled to full faith and credit in this State since the New York courts have the right to modify or change the decree for past due alimony in a suit to enter a money judgment on the decree.

Consistent with the holdings of the United States Supreme Court this court has held that in order for such judgment to have the requisite finality it must appear that it is not subject to future modification and also that the jurisdictional requirements applicable to both the subject matter and the person were present when the judgment was entered. *Conwell v. Conwell,* 3 *N. J.* 266 (1949); *Robison v. Robison, supra; Woodhouse v. Woodhouse, supra.*

The respondent, on the other hand, relying on *Sistare v. Sistare,* 218 *U. S.* 1, 30 *S. Ct.* 682, 54 *L. Ed.* 905 (1910), argues that past due installments for alimony under the New York law become absolute and vested upon their becoming due. Such was the holding in the *Sistare* case. The same holding was made in our case of *Bolton v. Bolton,* 86 *N. J. L.* 622 (*E. & A.* 1914).

Where a decree for alimony is made the basis of an action in another jurisdiction every reasonable implication must be resorted to against the existence of a power to modify or revoke installments of alimony already accrued, in the absence of clear language manifesting an intention to confer it. *Barber v. Barber,* 323 *U. S.* 77, 65 *S. Ct.* 137, 89 *L. Ed.* 82 (1944); *Griffin v. Griffin,* 327 *U. S.* 220, 66 *S. Ct.* 556, 90 *L. Ed.* 635 (1946).

In this latter case a judgment was entered in New York in 1936 in a contempt action fixing the arrears of alimony under a 1926 decree at $18,493.64. Subsequently a motion was made in 1938 and an order entered directing the Clerk of the Supreme Court to enter a money judgment pursuant to the statute based upon the 1936 finding in the sum of $25,382.75. No notice of this latter judgment was given to the defendant. The United States Supreme Court held

that the petitioner could not go behind the 1936 judgment fixing the alimony as due to a certain date in 1935 because his appeal from this judgment was dismissed for lack of jurisdiction and that that judgment was a finality. It also held that since the petitioner was not given notice of the application to enter the 1938 judgment that there was a lack of due process and that he was entitled to assert such defenses as arose between the 1935 date and the judgment entered in 1938. This decision was based on certain amendments to the New York statute applicable.

The present applicable statute is section 1171–B of the New York Civil Practice Act as amended by *P. L.* 1940, *c.* 226; *P. L.* 1947, *c.* 743 and *P. L.* 1948, *c.* 212, all of which amendments are subsequent to the *Sistare* decision. With the sections in italics which were added by the 1948 amendment the statute presently reads:

"Where the husband in an action for divorce, separation, annulment, or declaration of nullity of a void marriage, or a person other than the husband when an action for an annulment is maintained after the death of the husband, makes default in paying any sum of money as required by the judgment or order directing the payment thereof, *the court in its discretion may make an order directing the entry of judgment for the amount of such arrears, or for such part thereof as justice requires having a regard to the circumstances of the respective parties,* together with ten dollars costs and disbursements. The application for such order shall be upon such notice to the husband or other person as the court may direct. Such judgment may be enforced by execution or in any other manner provided by law for the collection of money judgments. *The relief herein provided for is in addition to any and every other remedy to which the wife may be entitled under the law; provided that when a judgment for such arrears or any part thereof shall have been entered pursuant to this section, such judgment shall thereafter not be subject to modification under the discretionary power granted by this section; and after the entry of such judgment the judgment creditor shall not thereafter be entitled to collect by any form of remedy any greater portion of such arrears than that represented by the judgment so entered.*" (Italics supplied.)

It appears that these amendments, together with amendments to sections 1140, 1140–A, 1155, 1169, 1170 and 1170–A, were recommended by the New York Law Revision Committee and adopted at their suggestion. Their purpose is stated to be to resolve the conflict among Appellate

Divisions to make it clear that court in its discretion may reduce or cancel arrears payable under a matrimonial decree.

*Griffin v. Griffin, supra,* was decided in 1945 prior to the 1947 and 1948 amendments to this section, and therefore is not authority as to the meaning of the statute as amended. It is authority for the proposition that the failure to give notice to the husband of the judgment fixing the amount of alimony in arrears constituted a lack of due process.

We find in the statute as amended a clear language manifesting an intention to confer upon the courts of New York the power to modify or reduce arrears payable under a matrimonial decree or judgment, and the right to such past due amounts only becomes vested and absolute after a judgment for the arrears on notice is entered; in the words of the statute, "such judgment shall thereafter not be subject to modification under the discretionary power granted by this section." Under the statute, when the application is made to enter a judgment for the amount due in arrears the defaulting party is entitled to establish any defense "as justice requires having a regard to the circumstances of the respective parties."

While it is true this provision places a considerable burden upon the party seeking to collect the past due alimony, *cf.* the dissenting opinions in *Griffin v. Griffin, supra,* this is a matter of policy of the State of New York and is not a reason for granting full faith and credit in any other state to the alimony provisions of a divorce decree which does not have the finality to entitle it to full faith and credit, nor should it be given as a matter of comity where the notice has not been given.

In *Griffin v. Griffin, supra* [327 *U. S.* 220, 66 *S. Ct.* 560], the court said:

"Moreover due process requires that no other jurisdiction shall give effect, even as a matter of comity, to a judgment elsewhere acquired without due process. * * * Since by virtue of the due process clause the judgment is ineffective in New York to adjudicate petitioner's right for enforcement purposes, it cannot be made the instrument for enforcing elsewhere the obligation purportedly adjudicated by it."

Pending the filing of this appeal and bringing it on for hearing the appellant and respondent consented to an order being entered in this cause in the Chancery Division "that a judgment be entered in favor of the plaintiff and against the defendant in the sum of $2000.00 together with costs to be taxed." Since the parties have agreed that $2,000 is the amount that is due and owing and that in all probability would be the judgment of the New York court if the technicalities of the New York procedure were to be followed, we see no reason for ordering the respondent to return to New York to formally establish under their procedure this amount as a money judgment which would then be entitled to full faith and credit in this State.

We think these facts as they exist will permit our courts, without straining the rules of comity, or doing violence to the Full Faith and Credit Clause, to proceed with this cause on the basis that the arrearages amount to $2,000. *Cf. O'Loughlin v. O'Loughlin,* 6 *N. J.* 170 (1951).

The judgment below upholding the validity of the New York judgment and setting aside the Arkansas decree and granting a divorce on the grounds of adultery is affirmed, and since both parties are in this State and jurisdiction exists under *N. J. S.* 2*A*:34–23 and *N. J. S.* 9:2–2 the cause is remanded to the Superior Court, Chancery Division, to be proceeded with consistent with the views expressed in this opinion for the purpose of enforcing the collection of the sum agreed as due on the arrearages, *Woodhouse v. Woodhouse,* 17 *N. J.* 409 (1955), and for the further purpose of fixing such alimony for the wife and support for the child as may be due in the future, if the child who is now apparently 21 is not emancipated.

HEHER, J., concurring in result.

*For affirmance*—Chief Justice VANDERBILT and Justices HEHER, OLIPHANT, WACHENFELD, BURLING, JACOBS and BRENNAN—7.

*For reversal*—None.