**Paddy Eugene MESSERSMITH et al., Plaintiffs,**

**v.**

**Lewis MATTEUCCI et al., Defendants.**

**Civ. No. 9505.**

United States District Court
E. D. California.

Oct. 11, 1966.

Jack H. Werchick, San Francisco, Cal., for plaintiff, Messersmith.

Gudmundson, Siggins, Stone & Goff, Charles E. Goff, San Francisco, Cal., for defendant, Matteucci.

## MEMORANDUM AND ORDER

HALBERT, District Judge.

Defendant has, pursuant to Rule 12, Federal Rules of Civil Procedure, moved to dismiss this action, based upon the diversity jurisdiction of this Court, on the ground that the parties lack the required diversity of citizenship. Defendant is admittedly a citizen of the State of California as, he asserts, is plaintiff. The matter has been submitted for resolution upon affidavits and the plaintiff's deposition pursuant to Rule 43(e), Federal Rules of Civil Procedure.

The issue to be resolved has most often been answered in the federal courts by equating the term "citizenship" with the commonlaw concept of "domicile" (See: Reynolds v. Adden, 136 U.S. 368, 348, 10 S.Ct. 843, 34 L.Ed.2d 360; Janzen v. Goos, 302 F.2d 421). In turn, domicile has most often been defined as the concurrence of two factors: (1) residence *in fact* and (2) *animus manendi*, the intention to remain at the place of residence for an indefinite period of time (See: Messick v. Southern Pa. Bus. Co., D. C., 59 F.Supp. 799; Pemberton v. Colonna, 189 F.Supp. 430), although some courts have viewed the second requirement in negative terms, i. e., the absence of an intention to go elsewhere (See, e. g., White v. Tennant, 31 W.Va. 790, 8 S.E. 596). Even the latter standard, however, requires a modicum of positive intent, or as Mr. Justice Holmes once said, the

party must intend to stay "for a time to which [he] did not then contemplate an end" (See: Williamson v. Osenton, 232 U.S. 619, 625, 34 S.Ct. 442, 58 L.Ed. 758). It is apparent, however, that regardless of which of the two standards is adopted in regard to *animus manendi*, a certain mental and thus subjective element must exist in order to turn residence in fact into a domicile in law (Compare: Restatement, Conflict of Laws 2d, § 19).

■■ By his affidavit, filed after the motion to dismiss was made, plaintiff affirms that he has always considered the State of Washington to be his home and that his removal to California prior to the institution of this suit was temporary in nature. Although the defendant contends that such statements of intention are "self-serving" and thus entitled to little weight, the Court is of the view that when the affidavit is read in conjunction with the entire deposition it is not inconsistent in any respect and is thus a valid source of probative evidence (See: 1 McCormick on Evidence, § 275). At the time of the deposition, plaintiff made several instinctive references to the State of Washington as his "home" (See, e. g., RT 17:5–6). Moreover, the evidence clearly showed that Washington was the "pre-eminent headquarters" (Williamson v. Osenton, supra) to which plaintiff had exhibited many of those ties which are generally considered indicative of domicile: (1) purchase of a home (RT 6:9–11); (2) return following absence for purposes of employment (RT 4:15–5:5); and (3) friends and family. Under such circumstances, the Court is of the view that plaintiff has carried his initial burden of proof by showing a definite domicile of choice in the State of Washington—the burden of going forward with the evidence thus shifts to the defendant. As the Supreme Court of the United States once noted:

"A domicil once acquired is presumed to continue until it is shown to have been changed * * *. Where a change of domicil is alleged the burden of proving it rests upon the person making the allegation * * * To constitute the new domicil two things are indispensable: First, residence in the new locality; and second, the intention to remain there * * *. Mere absence from a fixed home, however long continued, cannot work the change. There must be *animus* to change the prior domicil for another. Until the new is acquired, the old one remains * * *. These principles are axiomatic in the law upon the subject." (Mitchell v. United States, 88 U.S. 350, 21 Wall. 350, 353, 22 L.Ed. 584, 588; and see: State of Texas v. State of Florida, 306 U.S. 398, 427, 59 S.Ct. 563, 83 L.Ed. 817).

The record is devoid of any evidence which would indicate any intention on the part of plaintiff to "change the prior domicil for another." The most that can be said is that plaintiff came to California in order to take temporary employment which he expected to last about six months—beyond that his plans did not extend (Compare: Williamson v. Osenton, supra). The record makes plain the fact that plaintiff's alleged new domicile was in fact no domicile at all:

"Q. Yes. Were you actually living in Tule Lake at the time of that second accident?

A. We had just arrived there and we had some stuff and we got an apartment.

Q. Had you moved in?

A. Yes.

Q. Can you remember where the apartment was?

A. It was on Main Street over the Veterans Club.

Q. So you and the new Mrs. Messersmith lived in there?

A. (Witness nods head affirmatively.)

Q. Did you take a job there?

A. I had one promised to me.

Q. A permanent job?

A. Pardon me?

Q. A permanent job?

A. Just part time.

Q. But I mean it's permanent, as far as being part time is concerned? You could continue indefinitely? You were going to continue indefinitely?

A. Yes.

Q. And you intended to remain there, is that correct?

A. Yes. While that job was on, yes.

Q. You intended to remain there permanently, as far as you knew?

MR. GONZALES: Until the job ran out, you said?

THE WITNESS: *Yes. The job was supposed to last somewhere around six months.*

MR. GOFF: Did you have any plans for after that?

A. *No. I can't say that I did.*

Q. Did you intend to remain there after that job ran out?

A. *I can't tell you that, either.*

Q. But you had no plans to leave there?

A. No. No plans to stay. Just undecided I guess.

Q. Had you any plans to return to Washington?

A. Well, I know I would have went back up there on a visit because my folks lived there and my wife's folks lived there.

Q. But you had no plans to leave California permanently?

A. *No. I didn't have any plans at all.*

MR. GONZALES: Of course, you didn't have plans to stay there permanently either, did you?

THE WITNESS: No. It was according to the way the jobs went, I guess." (Rt 8:18–9:26; with emphasis added)

The Court is of the view that such a tenuous connection with a state does not constitute citizenship for the purposes of federal diversity jurisdiction (Compare: Jardine v. Intehar, D. C., 213 F.Supp. 598; Messick v. Southern Pa. Bus Co., supra). Under such circumstances the common-law presumption in favor of a former domicile of choice must control.

Assuming, *arguendo*, however, that plaintiff became a citizen of California when he arrived in order to take a temporary job, the subsequent return to Washington of plaintiff's wife and family possessions which was necessitated by plaintiff's hospitalization was sufficient to reestablish the former domicile. The law does not expect nor require the impossible, and when a man becomes physically unable to move from his bed, the Court is of the view that he may reestablish a former domicile by way of sending his wife and possessions home (See: Bangs v. Inhabitants of Brewster, 111 Mass. 382; compare: Lea v. Lea, 18 N.J. 1, 112 A.2d 540; Restatement, Conflict of Laws 2d, § 16 comment (d)).

Taking the record as a whole, the Court concludes that plaintiff established a domicile of choice in the State of Washington and that his subsequent trip to California was but one of the many sojourns in search of work that have characterized his life. Upon that basis, the Court finds that plaintiff was not a citizen of the State of California at the time this suit was filed.

It is, therefore, ordered that defendant's motion to dismiss plaintiff's complaint for failure of diversity of parties be, and the same is, hereby denied.