255 N.J. Super. 420 (1992)
605 A.2d 708
STEPHEN BEUKAS, BRIAN WICENSKI, MARIO RAMOS AND OTHER STUDENTS OF THE COLLEGE OF DENTAL MEDICINE OF FAIRLEIGH DICKINSON UNIVERSITY, PLAINTIFFS-APPELLANTS,
v.
THE BOARD OF TRUSTEES OF FAIRLEIGH DICKINSON UNIVERSITY, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued March 3, 1992.
Decided March 17, 1992.
*421 Before Judges PRESSLER, SHEBELL and D'ANNUNZIO.
Michael Gross argued the cause for appellants (Gross & Gross, attorneys).
James L. Plosia, Jr., argued the cause for respondents (Sills, Cummis, Zuckerman, Radin, Tischman, Epstein & Gross, attorneys).
PER CURIAM.
This is an action by former students of the College of Dental Medicine of Fairleigh Dickinson University (University) against the University for damages allegedly arising from the University's decision to close the dental college. The issues of liability and damages were bifurcated and liability was tried on a stipulation of facts. The plaintiffs appeal from an adverse judgment. We now affirm substantially for the reasons expressed by Judge Eichen in her opinion below. Beukas v. Board of Trustees of Fairleigh Dickinson University, 255 N.J. Super. 552, 605 A.2d 776 (Law Div. 1991).
We add only the following. Plaintiffs relied, in part, on the University's dental college catalog as a basis for their breach of contract claim. The University's Graduate Studies Bulletin, distributed to all graduate students including dental students, for the relevant time periods, contained a significant reservation of rights. It stated:

*422 The University reserves the right in its sole judgment to make changes of any nature in the University's academic program, courses, schedule, or calendar whenever in its sole judgment it is deemed desirable to do so. The University also reserves the right to shift colleges, schools, institutes, programs, departments, or courses from one to another of its campuses. The foregoing changes may include, without limitation, the elimination of colleges, schools, institutes, programs, departments, or courses, the modification of the contents of any of the foregoing, the rescheduling of classes, with or without extending the announced academic term, the cancellation of scheduled classes, or other academic activities.
....
The University may suspend classes if they cannot be held for reasons beyond its reasonable control, such as: fire, destruction of buildings, civil disturbances, work stoppage, labor dispute, strike, lock out (and whether or not in any of the last four cases it is within the University's power to concede to or meet the demands of its faculty or other employees), wars, or governmental actions. In the event such suspension lasts for an extended period of time and the University does not schedule appropriate make-up classes, a partial refund of tuition will be made as the University deems appropriate under the circumstances. Payment of tuition or attendance at any classes shall constitute a student's acceptance of the University's rights as set forth in this and the two preceding paragraphs. [Emphasis added.]
Even if we assume, for analytical purposes, that the various University bulletins constituted an enforceable contract, that contract would include the reservation of rights reproduced above. Moreover, to the extent that the University's freedom of action under its reservation of rights was limited by an implied covenant of good faith and fair dealing, see Onderdonk v. Presbyterian Homes of N.J., 85 N.J. 171, 182, 425 A.2d 1057 (1981), we perceive no violation of that covenant. The University, faced with a substantial budgetary shortfall due to the State's unilateral decision to discontinue its financial aid, acted reasonably and humanely in arranging for transfers of its dental students to other dental schools and in subsidizing any differences in tuition.
Affirmed.