748 A.2d 142 (2000)
329 N.J. Super. 433
Matthew A. LIPMAN, Plaintiff-Appellant,
v.
RUTGERS-The STATE UNIVERSITY OF NEW JERSEY, Defendant-Respondent.
Superior Court of New Jersey, Appellate Division.
Argued March 1, 2000.
Decided April 4, 2000.
*144 Ronald P. Groseib, Fair Lawn, for plaintiff-appellant (Mr. Groseibl, attorney; Mr. Groseibl and Lawrence W. Lipman, of counsel and on the brief).
Gavin J. Rooney and Nicole Bearce Albano, Roseland for defendant-respondent (Lowenstein, Sandler, Kohl, Fisher & Boylan, attorneys; Mr. Rooney and Ms. Albano, on the brief).
Before Judges CARCHMAN, LEFELT and LINTNER.
*143 The opinion of the court was delivered by LEFELT, J.S.C. (temporarily assigned).
Plaintiff Matthew Lipman filed a declaratory judgment action against Rutgers University School of Law-Camden, after Rutgers determined that he was an out-of-state student subject to significantly higher tuition than that accorded New Jersey students. Lipman sought a declaration that he was domiciled in New Jersey and, therefore, entitled to in-state student tuition. The trial judge evaluated Rutgers' domicile decision de novo, and granted the University summary judgment, concluding that Lipman was a Pennsylvania domiciliary. Lipman appealed. We affirm the judgment despite our conclusion that the arbitrary, capricious or unreasonable review standard should have been utilized.
Because the proper appellate review standard is at issue, the following facts are divided between those used by Rutgers to determine Lipman's domicile, and those developed during the declaratory judgment proceeding.

The Facts Rutgers Considered
Lipman was born in Summit, New Jersey on July 10, 1975. He lived in Parsippany for two years until his parents moved to 292 Cornwall Road, Glen Rock, New Jersey. Lipman was raised in Glen Rock and graduated from the local high school in June 1993. He then attended the University of Pennsylvania in Philadelphia, and graduated in May 1997. During his first three years at the University of Pennsylvania, Lipman lived in an on-campus dormitory. During his senior year, he lived in an off-campus house with several classmates. Lipman also worked part-time in Philadelphia from May 1996 through June 1997. During his college years, Lipman would return to his parents' home in Glen Rock during semester breaks, holidays, and summer vacations.
Upon graduation from college, Lipman left his off-campus housing and returned to Glen Rock. Lipman had previously applied to and been accepted by Rutgers Law School-Camden. After consulting with the law school admissions director, Lipman decided to live off-campus because he believed Camden would be easily accessible via mass transit. Therefore, in August 1997, he rented an apartment at 2129 Pine Street in Philadelphia. The lease term was September 1, 1997, until June 30, 1998, with automatic month-to-month renewal thereafter.
On August 25, 1997, shortly after classes began, Lipman completed a change of address form to advise Rutgers of his new "local" Pine Street, Philadelphia address. In this form, Lipman maintained that his permanent address was his parents' Glen Rock residence. Two days later, based on Lipman's change of address form, Rutgers preliminarily changed his tuition status to out-of-state or non-resident. Then, in October 1997, Rutgers billed Lipman for additional tuition due to his re-classification as a non-resident.
Lipman appealed Rutgers' decision. On October 28, 1997, he filed a Residency *145 Analysis Form, in which he relied on his parents' status as New Jersey residents to support his position that he remained domiciled in New Jersey. Lipman also pointed out that he had a New Jersey driver's license, was registered to vote in New Jersey, and maintained New Jersey bank accounts. However, Lipman disclosed that he did not file a tax return with New Jersey in 1996 or 1997. Lipman also revealed that he was completely financially dependent on his parents.
On November 17, 1997, Lipman's initial internal appeal was denied. The only explanation provided was that "[a]fter reviewing your Residency Analysis Form and accompanying materials, it has been determined that you are a Non Resident." Lipman pursued the matter with the Director of Graduate and Professional Admissions. In this appeal, Lipman indicated that "[s]ince I resided in Philadelphia while going to Penn, I felt comfortable continuing to live in the city while attending Rutgers ....it appears to be irrelevant what my residency status is, since I am still a dependent of my parents, who, like myself, are longtime New Jersey domiciliaries." This appeal was also denied on December 12, 1997. The denial letter explained:
The residency of your parents is irrelevant. New Jersey Administrative Code 9A:9-2.6 considers graduate or professional students to be independent students. Consequently, residency for tuition purposes is based upon your own, not your parents domicile. Since your residence is in Pennsylvania, you do not qualify for New Jersey tuition rates.
Lipman filed his final appeal at Rutgers with the Vice-President for University Budgeting. In addition to attaching copies of his prior appeals, Lipman wrote a four page single-spaced letter setting forth his arguments. On page three, he indicated that his domicile and permanent residence was Glen Rock. Lipman explained that by renting a local apartment in Philadelphia while attending Rutgers, he was not abandoning his Glen Rock residence, but was merely adding a second residence. He stated, "[t]he small apartment that I maintain in Philadelphia strictly is temporary, and for this reason I have a month-to-month arrangement. I do not understand how this can be considered my permanent home." Lipman further explained that he now understood that "`an independent student loses New Jersey residency status for tuition upon abandonment of the New Jersey domicile.' However ... I never abandoned my domicile as defined by the law."
Nevertheless, the Vice President for University Budgeting denied Lipman's final appeal on March 26, 1998, by briefly stating: "I have carefully reviewed your letter of appeal, but I regret to inform you that I can find no grounds on which to determine that you qualify for in-state tuition...." Thereafter, on May 11, 1998, Lipman filed his declaratory judgment action in Superior Court.

The Facts Developed After Rutgers' Decision
During discovery in the declaratory judgment action, Lipman's father testified that he suggested his son apply to Rutgers School of Law-Newark so his son could live with his parents in Glen Rock. Lipman refused to apply to the Newark school, telling his father that he "wanted to stay in the Philadelphia area." Discovery also revealed that Lipman's New Jersey bank accounts were both established by his father when Lipman was a child. The only bank account established solely in Lipman's name was in Philadelphia.
In the summer of 1998, after filing his declaratory judgment action, Lipman continued to live in Philadelphia while he worked for a Philadelphia law firm. Lipman also paid Pennsylvania taxes for 1997.
In August 1998, Lipman rented a new apartment with his fiancee, Lisa Lebenstein, located at 412 Bainbridge Street in Philadelphia. Lebenstein admitted that she was a Pennsylvania domiciliary, *146 with a Pennsylvania driver's license and car registered in Pennsylvania. Lipman shared Lebenstein's car, and they expected to renew their lease at 412 Bainbridge Street in August 1999.
In the summer of 1999, Lipman again worked for a Philadelphia law firm. Lipman admitted that he has no intention of returning to his parents' home in Glen Rock following his marriage and graduation from law school in the spring of 2000.
Lipman appealed to this court after the motion judge applied a de novo review standard and granted summary judgment to Rutgers, concluding that Lipman was a Pennsylvania domiciliary. In reaching this conclusion, the motion judge relied on evidence developed after Rutgers made its domicile decision. The judge indicated in part:
I am satisfied that the proofs demonstrate that there is no genuine issue of material fact in dispute, I should say, that up to August 1997 Mr. Lipman's domicile was Glen Rock, New Jersey and that from and after that date he abandoned that Glen Rock residence as a domicile. That is not, and there is no lip service that Mr. Lipman can give to it to suggest otherwise. That is not the place whenever he is absent to which he has an intention of returning, his intention of returning is in Philadelphia.
....
His intent for present purposes where he has converted his domicile is in Pennsylvania. That is supported by his actions in living in Philadelphia, his obtaining jobs in Philadelphia, [and] the tenuous connection [to] Glen Rock[.]

The Proper Standard of Review
Lipman, in this appeal, contends that while the motion judge correctly applied de novo review to assess Rutgers' decision, the judge erred by finding that he was a Pennsylvania domiciliary. Lipman also argues that even if the arbitrary, capricious or unreasonable standard of review applies, he remains domiciled in New Jersey and we must, therefore, reverse the motion judge.
N.J.S.A. 18A:62-4 dictates that residency status for tuition purposes is governed by a student's domicile. Regulations promulgated by the New Jersey Commission on Higher Education invests Rutgers with the responsibility of determining the domicile of its students for tuition purposes. N.J.A.C. 9A:5-1.1 and -1.2. When Rutgers attempts to determine whether a student is domiciled in New Jersey, it acts much like an administrative agency.
Normally, State agency action is subject to the deferential arbitrary, capricious or unreasonable standard of review. E.g., George Harms Constr. Co., Inc. v. New Jersey Turnpike Auth., 137 N.J. 8, 27, 644 A.2d 76 (1994); In re Warren, 117 N.J. 295, 296-97, 566 A.2d 534 (1989); Public Serv. Elec. and Gas Co. v. New Jersey Dep't of Envtl. Protect., 101 N.J. 95, 103, 501 A.2d 125 (1985). Under that standard, our review is restricted to the following three inquiries:
(1) whether the agency action violates the enabling act's express or implied legislative policies; (2) whether there is substantial evidence in the record to support the findings upon which the agency based application of legislative policies; and (3) whether, in applying the legislative policies to the facts, the agency clearly erred by reaching a conclusion that could not reasonably have been made upon a showing of the relevant factors.
[Public Serv., supra, 101 N.J. at 103, 501 A.2d 125.]
This deference is afforded because we recognize the separate functions with which agencies are legislatively instilled. In addition, some agencies exercise a technical expertise that is not possessed by the courts.
Under the Administrative Procedure Act, N.J.S.A. 52:14B-1 to -24, however, "State agency" is defined as including *147 each of the principal executive branch departments "and all boards, divisions, commissions, agencies, departments, councils, authorities, offices or officers within any such departments" authorized to promulgate rules or adjudicate contested cases. N.J.S.A. 52:14B-2(a). Rutgers was established as the State University of New Jersey, and was not administratively located within an Executive Branch department. The University is not a State agency under the Administrative Procedure Act.
Yet, Rutgers has long been considered an instrumentality of the State for the purpose of providing public higher education, and whose property and assets are impressed with a public trust for that purpose. Trustees of Rutgers College v. Richman, 41 N.J.Super. 259, 296, 125 A.2d 10 (Ch.Div.1956). In addition, our courts have protected Rutgers' functions from local interference because of its status as a State instrumentality. For example, Rutgers is immune from local zoning ordinances and local land use regulations. Rutgers, The State University v. Piluso, 60 N.J. 142, 286 A.2d 697 (1972). Rutgers has also been deemed immune from local real property taxation. Rutgers v. Piscataway Township, 1 N.J.Tax 164 (Tax 1980). The legislature also instructs that "the University shall be and continue to be given a high degree of self-government." N.J.S.A. 18A:65-27a. See also Cohen v. Board of Trustees of Univ. of Medicine and Dentistry of N.J., 240 N.J.Super. 188, 194-95, 572 A.2d 1191 (Ch.Div.1989) (recognizing unique attributes of State universities).
We have previously concluded that universities are entitled to deference in some of their internal decisions. In Napolitano v. Trustees of Princeton Univ., 186 N.J.Super. 548, 570, 453 A.2d 263 (App. Div.1982), for example, we refused to retry the issue of plagiarism and decided to "review the evidence before the [academic body] and ... determine whether the evidence presented was sufficient to support the [decision]." In Beukas v. Board of Trustees of Fairleigh Dickinson Univ., 255 N.J.Super. 552, 605 A.2d 776 (Law Div. 1991), aff'd, 255 N.J.Super. 420, 605 A.2d 708 (App.Div.1992), we affirmed the trial court's conclusion that the relevant inquiry when reviewing a university's decision to cease operations due to financial difficulties is one of arbitrary, capricious, or bad faith conduct.
No New Jersey case has yet determined that a university's domicile decisions are subject to the arbitrary, capricious or unreasonable review standard. However, several out-of-state cases have so decided. Webster v. State Bd. of Regents, 123 Ariz. 363, 599 P.2d 816, 818 (1979) (concluding that to reverse a resident tuition decision, "the trial court must find that the agency has acted arbitrarily, capriciously, or has abused its discretion"); Allen v. Scherer, 452 N.E.2d 1031, 1035 (Ind.Ct.App.1983) (deciding that where the findings on resident tuition "could reasonably have given rise to two different inferences, the inference chosen by the agency must be sustained even though the court might have chosen a different inference"); Peck v. University Residence Committee of Kansas State Univ., 248 Kan. 450, 807 P.2d 652, 660 (1991) (limiting court's review to whether the residence decision was "unreasonable, arbitrary or capricious"); Norman v. Cameron, 127 N.C.App. 44, 488 S.E.2d 297, 300, review denied, 347 N.C. 401, 494 S.E.2d 416 (1997) (concluding that university's residence based tuition decision must be upheld if supported by substantial evidence); Frame v. Residency Appeals Comm. of Utah State Univ., 675 P.2d 1157, 1165 (Utah 1983) (declaring university's resident based tuition determination subject to arbitrary and capricious standard); Ravindranathan v. Virginia Commonwealth Univ., 258 Va. 269, 519 S.E.2d 618, 620 (1999) (finding university's denial of in-state tuition was supported by evidence and was not unreasonable).
We recognize that "[d]omicile is a relation which the law creates between an individual and a particular locality or country." *148 Lea v. Lea, 28 N.J.Super. 290, 296, 100 A.2d 545 (Ch.Div.1953), rev'd in part on other grounds, 32 N.J.Super. 333, 108 A.2d 303 (App.Div.1954), aff'd, 18 N.J. 1, 112 A.2d 540 (1955). Obviously, our courts have substantial experience dealing with this legal concept.
However, Rutgers makes an initial domicile determination for each student admitted to the University. Thus, Rutgers makes thousands of domicile determinations every year. These decisions are mixed questions of law and fact. When a university determines domicile, aside from the applicable law, the university must also confront its students' living arrangements, off-campus activities, and interaction with the school, as well as its own tuition policies. Therefore, a substantial portion of the domicile evaluation involves assessing factors that are uniquely within Rutgers' expertise and, in our opinion, warrant deference by the judiciary. Accordingly, we hold that Rutgers' domicile decisions, when made to determine appropriate tuition charges for its students, shall be accorded deference, and reviewed under the arbitrary, capricious or unreasonable standard.

The Domicile Decision
We move on to assess Rutgers' domicile decision in light of the review standard normally utilized to evaluate administrative agency action. Therefore, we consider only the facts that Rutgers had before it in rendering its domicile decision.
A person's domicile is a permanent home from which he or she does not intend to move. In re Unanue, 255 N.J.Super. 362, 374, 605 A.2d 279 (Law Div.1991), aff'd, 311 N.J.Super. 589, 710 A.2d 1036 (App.Div.), certif. denied, 157 N.J. 541, 724 A.2d 801 (1998), cert. denied, ___ U.S. ___, 119 S.Ct. 1357, 143 L.Ed.2d 518 (1999). Three elements may be considered when determining whether a change of domicile has occurred: (1) whether there has been an actual and physical establishment of an abode in a particular state; (2) whether the subject intends to make a home permanently or at least indefinitely in that state; and (3) whether the subject intends to abandon his or her previous domicile. Id. at 376, 605 A.2d 279. Once established, a person's domicile continues until superseded by a new domicile. Lyon v. Glaser, 60 N.J. 259, 277, 288 A.2d 12 (1972); In re Fisher's Will, 13 N.J.Super. 48, 53, 80 A.2d 227 (App.Div.1951). Furthermore, "[t]he intention to make a new home must be unqualified [and] not conditioned on the happening of a future event." Sprague v. Sprague, 131 N.J.Eq. 104, 107, 23 A.2d 810 (E. & A.1942).
Lipman concedes that as a graduate student the applicable regulation requires Rutgers to consider him independent of his parents, regardless of his actual financial dependency. N.J.A.C. 9A:9-2.6 (a)1, -(b)3. Thus, Rutgers must determine Lipman's domicile unburdened by any imputation from his parents.
N.J.S.A. 18A:62-4 provides:
Persons who have been resident within this State for a period of 12 months prior to enrollment in a public institution of higher education are presumed to be domiciled in this State for tuition purposes. Persons who have been resident within this State for less than 12 months prior to enrollment are presumed to be nondomiciliaries for tuition purposes.
Furthermore, the applicable regulations and Rutgers' policies required Lipman to prove he was domiciled in New Jersey. N.J.A.C. 9A:5-1.1(c).
The record developed during the Rutgers appeal process included: Lipman's Residency Analysis Form, and the related documentation he submitted with it, such as his 2129 Pine Street lease; Lipman's detailed appeal letters; and Rutgers' three decision letters. In his Residency Analysis Form, Lipman revealed two other Philadelphia addresses, "21 S. 42nd St. Phila. Pa. 19104" and "3820 Locust Walk Phila. Pa. 19104," where he had resided during *149 the last three years. Lipman offered an explanation by writing: "During the last 3 years I attended college. So, these addresses were my temporary addresses. My permanent address has been 292 Cornwall Rd, Glen Rock N.J. 07452 for the past 19 years."
The record before Rutgers thus reflects that Lipman's only residences for the three years before matriculating at law school were in Philadelphia. The record also indicates that Lipman worked part-time in Philadelphia before attending Rutgers, and then continued to live in Philadelphia after admission. Furthermore, in his appeal to the Director of Graduate and Professional Admissions, Lipman stated that he wanted to live in Philadelphia while attending Rutgers because he "felt comfortable continuing to live in the city."
We imply from Rutgers' actions that the University concluded that Lipman failed to submit sufficient evidence to establish either an intent not to live indefinitely in Philadelphia or an intent to retain his prior Glen Rock domicile. Lipman, as a graduate student, did not establish that Glen Rock was his "true, fixed, permanent home, and principal establishment, and to which whenever he is absent, he has the intention of returning, and from which he has no present intention of moving." Unanue, supra, 255 N.J.Super. at 374, 605 A.2d 279. We conclude that Rutgers' decision in this regard was supported by credible evidence in the record. Close v. Kordulak Bros., 44 N.J. 589, 599, 210 A.2d 753 (1965).
Lipman argues that Rutgers erred because N.J.S.A. 18A:62-4 also provides: "Residence established solely for the purpose of attending a particular educational institution is not domicile for the purposes of this act." (emphasis added). However, even if it would be improper to presume that Lipman was a non-domiciliary upon admission to Rutgers because he had been living in Philadelphia while attending the University of Pennsylvania, Rutgers still had to determine whether Lipman was a New Jersey domiciliary during his first year at graduate school. Considering the length of time Lipman resided and worked in Philadelphia, along with the fact that he chose to live in Philadelphia after admission to Rutgers, we cannot conclude that it would be unreasonable to determine that Lipman had chosen to live in Philadelphia for purposes other than attending law school. Thus, it would be reasonable to conclude that he was not living in Philadelphia "solely" to attend Rutgers Law School at Camden. Certainly, if we were to consider the facts developed after Rutgers made its domicile decision, this conclusion would be further confirmed.
We do note, however, that Rutgers' fact finding was barely acceptable. The letter from the Director of Graduate and Professional Admissions was the only decision that provided Lipman with any reasons for Rutgers' domicile determination. Nevertheless, because we were able to determine Rutgers' rationale from the documents submitted and the brief explanation that was provided, we need not remand this matter. Katz v. Township of Howell, 67 N.J. 51, 63, 335 A.2d 14 (1975). In the future, we suggest that Rutgers reconsider its appeal process, and require more complete disclosure of its reasons for, at least, any domicile decision that is appealed to court.
We also note, in passing, that this matter was lodged in the Law Division as a declaratory judgment action. Final decisions and rules of State administrative agencies are normally appealed directly to the Appellate Division. R. 2:2-3(a)(2). Because neither party briefed nor argued whether the Law Division was the proper forum to seek review of Rutgers' domicile decisions, we leave that issue for another day.
Accordingly, we affirm the motion judge's decision to dismiss Lipman's complaint, though on grounds different from those below. Isko v. Planning Bd. of Tp. *150 of Livingston, 51 N.J. 162, 175, 238 A.2d 457 (1968).
Affirmed.