**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1635-24

ALFRED PETROSSIAN,

    Plaintiff-Appellant,

v.

CINDY R. JEBB, IN HER
OFFICIAL CAPACITY AS THE
PRESIDENT OF RAMAPO
COLLEGE OF NEW JERSEY,[1]

    Defendant-Respondent.

_____

Argued May 26, 2026 – Decided June 5, 2026

Before Judges Natali and Bergman.

On appeal from the Superior Court of New Jersey, Chancery Division, Bergen County, Docket No. C-000208-24.

Alfred Petrossian, appellant, argued the cause on appellant's behalf.

---

[1] Cindy R. Jebb is a defendant in her official capacity as the President of Ramapo College. For convenience, we refer to defendant as "Ramapo" throughout our opinion.

Rachel B. Kristol, Deputy Attorney General, argued the cause for respondent (Jennifer Davenport, Attorney General, attorney; Donna Arons, Assistant Attorney General, of counsel; Sadia Ahsanuddin and Rachel B. Kristol, Deputy Attorneys General, on the brief).

PER CURIAM

Plaintiff Alfred Petrossian appeals from two orders. The first is a March 12, 2025 final agency decision issued by Ramapo College of New Jersey (Ramapo) that denied his request for a student identification card. The second, a January 31, 2025 Law Division order, denied his application for sanctions. After considering the parties' arguments in the context of the record and the applicable law, we affirm both orders under review.

Plaintiff is a New Jersey resident who enrolled in Ramapo College for the Fall 2024 term as a participant in the College's Senior Citizen Program (Senior Citizen Program), established pursuant to N.J.S.A. 18A:62-3. Under this program, senior citizens are eligible to enroll in undergraduate courses on a tuition-waived and space available basis. Plaintiff paid all required fees, including a $213.26 parking fee, and was issued both a general campus parking permit and a special needs parking permit. He was assigned a student number, an email account, and was listed as a student in Ramapo's records under the program.

2

Plaintiff maintains that on the first day of classes for the Fall 2024 term, he approached the "ID office" at Ramapo and requested a student identification card. He alleged that he explained to the posted security officer that his Ramapo records supported his contention that he was a "matriculated student." After his request was denied, plaintiff stated he walked to the President's Office, and expressed his concerns to staff members about not being issued a student identification card.[2] Plaintiff also maintains he mailed the President's Office a formal request via certified mail memorializing his request for a student identification card but was never provided a response.

Approximately a month after the incident, plaintiff filed a verified complaint and an order to show cause in the Law Division in which he requested, among other relief, that the court issue an order granting him injunctive relief that required Ramapo to provide him with a student identification card. The court issued a December 2, 2024 order that required defendant to file a written response no later than December 25, 2024, and for plaintiff's response to be filed no later than December 29, 2024.

---

[2] According to Ramapo's Public Safety incident report, Petrossian "stormed into the President's Office demanding to speak with someone about an ID." The incident report stated that after speaking with staff members he "calmed down . . . [and] left the [President's Office] without incident."

A-1635-24

Defendant moved to dismiss the verified complaint contending, in part, that the court lacked subject matter jurisdiction over Ramapo's actions because plaintiff failed to exhaust his administrative remedies and never received a final agency decision. Plaintiff opposed the motion and later sought sanctions against the Deputy Attorney General (DAG) representing Ramapo because he received Ramapo's opposition papers by regular mail, not overnight, contrary to the DAG's representation in the certification of service, which compressed the time in which he could respond to Ramapo's submission. Plaintiff maintained the DAG's "falsehood" was knowing and willful.

At the subsequent hearing on the parties' competing applications, plaintiff explained his various enrollment statuses at Ramapo over time. He stated that prior to his attendance at Ramapo under the Senior Citizen Program, he enrolled as a "tuition-paying student," and then as a student under the "Friends of Ramapo" program.[3] He also clarified that the Fall 2024 term was the first time he registered pursuant to the Senior Citizen Program. He further explained when he enrolled as a matriculating student, he was issued a student identification card

---

[3] As best we can discern from the record, the Friends of Ramapo program is a separate initiative available to individuals who provide financial or other benefits to the college and in return are able to "access . . . academic coursework."

A-1635-24

in 2018, having paid tuition, and was issued a "Friends of Ramapo Association ID" when he enrolled under the "Friends of Ramapo" program.

With respect to plaintiff's sanctions application, the DAG represented to the court that the misstatement on the certification of service was an innocent mistake and was the result of an administrative error with counsel's staff, who erroneously delivered the motion papers by way of first-class mail. Counsel also noted that the motion papers were sent via eCourts, and plaintiff was nevertheless able to file opposition papers within time and never asked counsel or the court for an extension.

After considering the parties' written submissions and oral arguments, the court entered a January 2, 2025 order that granted Ramapo's motion to dismiss without prejudice and denied plaintiff's request for injunctive relief. In an oral decision, the court first explained that under Rule 2:2-3(a)(2), the Appellate Division has exclusive authority to review final decisions or actions of any state administrative agency or officer and Ramapo had not yet issued such a final decision. The court accordingly directed plaintiff to formally request a final determination from Ramapo and explained to plaintiff that based on Ramapo's written submissions and oral representations, it appears it refused his request for

a student identification card on the basis that he was not a matriculating student for the Fall 2024 semester.

The court also denied plaintiff's sanctions application and issued a conforming order on January 31, 2025. In its oral decision, the court explained that plaintiff's motion essentially amounted to a request to "impose sanctions on the government . . . for . . . a clerical error around the holiday." The court further noted that Ramapo's submissions were appropriately mailed, uploaded to eCourts in a timely fashion and concluded under these facts there was no basis under the <u>Rules</u> or established precedent to impose sanctions.

Plaintiff ultimately requested Ramapo issue a final administrative decision consistent with the court's instructions, and on March 12, 2025 Ramapo's Vice President and General responded to plaintiff's written request and denied plaintiff's request for a student identification card. Ramapo based its decision on plaintiff's limited enrollment status in the Senior Citizen Program and specifically the fact he was not a matriculating student entitled to a student identification card. In support, Ramapo relied on "Academic Policy Number 300-YY, Definition of a Ramapo Student," which provides, in relevant part:

> Ramapo College recognizes as a student any individual
> who has completed the following:

A-1635-24

- [P]aid a tuition deposit indicating "intent to enroll" or an admission enrollment fee;
- Registered for credit bearing courses; and
- Arrived on campus to begin the semester/term.

The letter further informed plaintiff that his participation in the Senior Citizen Program did not afford him status as a student entitled to a student identification card, despite his ability to access campus facilities to attend classes associated with the Senior Citizen Program. Ramapo specifically found that its records confirmed that plaintiff had not paid a tuition deposit leading to enrollment at the college, the classes to which he registered were not credit bearing courses, and in this regard the Senior Citizen Program does not apply to matriculating students or students enrolling in academic courses who are working towards attaining a college degree. As plaintiff was simply auditing courses, had not paid tuition, was not pursuing a degree, and was not admitted by the admissions office, he was considered to be a non-matriculated student not eligible for a student identification card.

Before us, plaintiff contends that Ramapo's denial of his request for a student identification card reserved for matriculating students was an arbitrary, capricious, and unreasonable decision. He argues that N.J.S.A. 18A:62-3 authorizes his enrollment as a student, and that Ramapo's own published policy

and past practices recognize Senior Citizen Program enrollees as "students." He points to his continuous enrollment, payment of fees, assignment of a student number and email, and prior issuance of student identification card under similar circumstances. Plaintiff also asserts that Ramapo's prolonged failure to issue a timely agency decision, and its ultimate denial of his request, deprived him of procedural due process and fundamental fairness.

Next, he claims that the denial of a student card has impeded his access to campus, educational services, and participation in campus life, thereby infringing on his rights to association, participation, and dignity. He further argues that his payment of fees and registration for courses created an express or implied contract with Ramapo, obligating it to provide him with the access and services customarily afforded to students, including a student identification card, and that Ramapo's actions violate the implied covenant of good faith and fair dealing.

As to the denial of the sanctions order, plaintiff maintains the court erred because the DAG knowingly filed a false certification, failed to timely serve him with the dismissal papers, and the court's sua sponte advancement of the return date deprived him of a fair opportunity to be heard. He asserts that these procedural irregularities and improprieties caused him prejudice and warranted

sanctions under <u>Rules</u> 1:2-4 and 1:4-8 and our case law. We disagree with all of these arguments.

We first address, and reject, plaintiff's challenges to Ramapo's decision to deny his request for a student identification card based on his undisputed status as a non-matriculating student. On that issue, we review Ramapo's final agency decision under well settled principles. We consider its decision presumptively valid, <u>Reilly v. AAA Mid-Atlantic Ins. Co. of N.J.</u>, 194 N.J. 474, 485 (2008), deferring to the "agency action that purports to effectuate statutory and regulatory authority," <u>Brady v. Dep't of Pers.</u>, 149 N.J. 244, 256 (1997). We will only reverse or modify the decision if it is arbitrary, capricious, or unreasonable, or violates legislative policies expressed or implied in the statutory scheme administered by the agency. <u>In re Musick</u>, 143 N.J. 206, 216 (1996). Our deference is grounded in recognizing the "agency's expertise and superior knowledge of a particular field." <u>In re Carter</u>, 191 N.J. 474, 483 (2007) (quoting <u>Greenwood v. State Police Training Ctr.</u>, 127 N.J. 500, 513 (1992)).

Our deference does not apply, however, to the agency's interpretations of questions of law, and "if substantial evidence supports the agency's decision, 'a court may not substitute its own judgment for the agency's even though the court might have reached a different result.'" <u>Ibid.</u> (quoting <u>Greenwood</u>, 127 N.J. at

513). We have previously determined that in certain circumstances, colleges and universities are entitled to similar deference with respect to certain internal decisions. Lipman v. Rutgers-State Univ. of New Jersey, 329 N.J. Super. 433, 441 (App. Div. 2000); see also Shim v. Rutgers, 191 N.J. 374, 382-83 (2007); Newman v. Ramapo Coll. of New Jersey, 349 N.J. Super. 196, 199 (App. Div. 2002).

The Senior Citizen Program was established pursuant to N.J.S.A. 18A:62-3, which provides:

> Persons Over 65; enrollment without payment of tuition[.]
>
> Each public institution of higher education in New Jersey may permit persons of the age of 65 or more years to enroll without the payment of any tuition charges in regularly scheduled courses; provided that available classroom space permits and that tuition paying students constitute the minimum number required for the course, provided that nothing herein shall preclude public institutions from requiring registration fees for individuals attending courses pursuant to waivers granted under this act.
>
> [(Emphasis added).]

Plaintiff's enrollment under N.J.S.A. 18A:62-3's permissive tuition waiver program is necessarily and reasonably proscribed by Ramapo's internal registration policies. Plaintiff expressly acknowledged during the order to show

10

cause proceedings that despite any previous enrollment status he enjoyed, his attendance during the Fall 2024 term was expressly limited to the tuition waiver Senior Citizen Program which permits limited access to Ramapo's educational benefits for non-matriculating students.

In its final decision, Ramapo clearly explained that issuance of a student identification card requires an individual requesting such an identification card to be considered either a "matriculated student[] or student[] enrolling in academic courses leading to the granting of a college degree." Ramapo's academic policy clearly proscribes that to be a student an individual must pay a tuition deposit or enrollment fee, register for credit bearing courses, and arrive on campus to begin the term.

We find no abuse of Ramapo's discretion here. The record is devoid of any indication that plaintiff fulfilled the academic policy requirements to be considered a matriculating student as there is no evidence in the record that he paid a tuition deposit or enrollment fee to Ramapo for the Fall 2024 term. He is not a matriculating student and does not qualify for a student identification card and thus Ramapo's decision is supported by sufficient credible evidence in the record and is not arbitrary, capricious, or unreasonable.

Ramapo acted well within its authority to deny plaintiff a student identification card while permitting him access to the campus for the Senior Citizen Program, as plaintiff's inconvenience of having to use personal identification prior to admission to the campus is a reasonable administrative decision to ensure the safety of Ramapo's campus by permitting only matriculating students access to all of the buildings and facilities, many of which are unrelated to the Senior Citizen Program. Further, plaintiff has not identified any statute, regulation, or policy that entitles him to a student identification card as a non-matriculated, non-degree-seeking auditor. Ramapo's decision does not contravene public policy or any of plaintiff's constitutional rights.

Most importantly, plaintiff was provided with all benefits under the statute and the Senior Citizen Program, and he has identified nothing in the record to substantiate his claims that he was denied access to the campus to attend the courses to which he is enrolled or participate fully in them. Indeed, he was provided with parking spaces, access to classrooms, and attendance in person and remotely along with access to email and other benefits to communicate with his professors. At best, plaintiff was required to use other identification to access his parking spot and the campus. Indeed, the record, and as further

confirmed at oral argument before us, supports the fact that he has participated in classes and communicated with his professors.

We find unpersuasive plaintiff's arguments that because he was once a matriculating student, and had received a student identification card in that capacity, or that he received a document issued by Ramapo while attending classes under the Friends of Ramapo program, Ramapo was somehow obligated to issue him a student identification card because he is now enrolled under the Senior Citizen Program. As noted, it is undisputed that at the time of the final agency decision, plaintiff was not a matriculating student that qualified him to receive a student identification card consistent with Ramapo policy and practice.[4] Plaintiff acknowledged that his prior status as a matriculated student or under the Friends of Ramapo program has long expired.

Although we acknowledge that various internal documents state plaintiff is a student, the record reflects that enrollees in the Senior Citizen Program are considered non-matriculated students. Specifically, Ramapo's "Senior Citizen Registration Process" provides that "non-matriculated students" not pursuing a

---

[4] Ramapo's final agency decision noted that three separate individuals were inadvertently issued identification cards, these individuals had an inactive status at Rampo, and the identification cards will be retrieved from them if they return to Ramapo. Plaintiff has not contested these findings.

A-1635-24

degree, such as plaintiff, can enroll in one or multiple courses but are limited to eleven "non-matric[-ulating] credit[s]." Ramapo's internal registration process further provides that if, however, a potential enrollee of the Senior Citizen Program is interested in pursuing a degree and thus to be considered a matriculating student, Ramapo requires that such a student "be admitted via the admissions office."

Moreover, although the Senior Citizen Program refers to such enrollees as "students" it does so with the qualifier that they are registered in Ramapo's systems under "non-matric" or "Friends and Alumni" statuses. Ramapo's internal policies further provide that after enrollees register in the Senior Citizen Program, they are verified as non-matriculated students, and a report is run to "verify the participants in the program are coded correctly." Clearly, Ramapo's final agency decision denying plaintiff's request was not arbitrary or capricious as its internal registration policies for the Senior Citizen Program do not recognize students such as plaintiff to be matriculated students qualifying for a student identification card.

We also reject plaintiff's challenge to the court's order denying his request for sanctions against the DAG assigned to represent Ramapo for the alleged violation of the court's order and Rules.

"'Our standard of review of the imposition of sanctions requires us to abstain from interfering with those discretionary decisions unless an injustice has been done.'" Cavallaro v. Jamco Prop. Mgmt., 334 N.J. Super. 557, 571 (App. Div. 2000). A "range of sanctions is available to the trial court when a party violates a court rule.'" Mandel v. UBS/PaineWebber, Inc., 373 N.J. Super. 55, 82 (App. Div. 2004) (citing Abtrax Pharms., Inc. v. Elkins–Sinn, Inc., 139 N.J. 499, 513 (1995) (quoting Zaccardi v. Becker, 88 N.J. 245, 252–53 (1982))). Further trial court's "have 'an inherent authority' to impose sanctions for blatant violations of our court rules apart from any specific provisions setting forth those sanctions." Ibid. (quoting Summit Trust Co. v. Baxt, 333 N.J. Super. 439, 450, (App. Div. 2000)).

Here, the trial court reasonably concluded that the DAG's service error was inadvertent and not willful, and that plaintiff was not prejudiced by any mistake. There is clearly no basis to disturb the court's exercise of its discretion with respect to that decision. See Cavallaro, 334 N.J. Super. at 571. The clerical error did not visit any injustice upon plaintiff as the record reflects the DAG also filed Ramapo's application via eCourts, and plaintiff timely filed his opposition papers without requesting an adjournment or an extension to file his papers. Finally, it is clear from our review of the transcript of the hearing that

15

the court fully considered plaintiff's arguments and submissions, and we are thus satisfied that the brief service delay had no effect on the outcome of the proceedings or otherwise warranted monetary or other sanctions.

To the extent we have not specifically addressed any of plaintiff's arguments, including his contract and constitutional-based contentions, it is because after our extensive consideration of the issues, we have determined they are without sufficient merit to warrant discussion in a written opinion. See R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Harley

Clerk of the Appellate Division